GEORGE G. NESBIT *vs.* WALTER S. CROSBY.

Third Judicial District, New Haven, January Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The alleged negligence of the defendant, controverted by him, consisted in leaving a horse and wagon standing diagonally across the street in the night, unattended and without any light. *Held* that the only standard of duty applicable to the case was the general rule of conduct: to exercise reasonable care under all the circumstances of the case ; and therefore the trial court properly left the questions of negligence and contributory negligence to the jury, to be determined by them as questions of fact upon the conflicting evidence.

The trial court charged the jury that "negligence" was another term for "want of ordinary care"; and that ordinary care was such as might reasonably be expected of "a man" in the given circumstances. *Held* that this instruction was not erroneous because it

did not qualify the man as an ordinarily prudent one.  The law is satisfied if the conduct of the party charged with negligence was in fact prudent under all the circumstances.

Nor does "ordinary care" exact a higher or greater degree of care than such as can reasonably be expected in view of the situation.

A request to charge that certain claims, if proved, entitled a party to a verdict, is properly refused, if the request is general and sweeping in its terms and ignores all possible explanatory, justifying, or modifying facts and circumstances.

A witness testified to what he observed of the occurrence in question, and stated that he had been in *M's* place earlier in the evening. *Held* that it was not erroneous to permit him to be asked on his cross-examination if *M* did not keep a saloon.

On his cross-examination a witness for the plaintiff was asked if he had not incurred expenses which he would personally have to pay if the plaintiff failed to recover.  *Held* that for the purpose of showing his interest the question was proper.

The exclusion of a question because it involves a false or unauthorized assumption in respect to previous testimony, is entirely proper.  If the party ruled against differs with the court as to the fact, he should then and there appeal to the stenographer's notes.

A nonexpert witness may give his opinion as to whether a wagon was in such a position that it could have come out of a certain driveway and been turned into the street from that point; that being a matter of ordinary, everyday observation and knowledge.

One who has heard a passing wagon may state whether in his opinion the horse was going fast or slow, judging from the sound.

A witness for the plaintiff, who testified on cross-examination that he had been arrested for breach of the peace on the defendant's complaint, was asked on his redirect if he had done anything for which he should be arrested.  This question was excluded, but he was permitted to testify that he had committed no act of violence. *Held* no error.

Argued January 23d—decided March 5th, 1902.

ACTION to recover damages for a collision in the highway, claimed to have been caused by the defendant's negligence, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Hubbard, J.;* verdict and judgment for the defendant, and appeal by the plaintiff for alleged errors in the rulings and charge of the court.  *No error.*

The complaint alleged, in substance, that the plaintiff's team, while being driven in the nighttime with due care along Savin Avenue in New Haven, ran into the defendant's team,

standing in the dark diagonally across the street where it had been improperly left for a considerable time without any person in charge and without light, signal or other indication of danger, by reason of which collision, which was without the fault of the plaintiff or his servants, the plaintiff's horse and carriage were injured. The defendant's team, located as stated, was alleged to constitute a dangerous obstruction in the highway.

The facts surrounding the collision were in dispute, and the allegations relating to the question of negligence controverted.

The defendant, in addition to the general denial, filed a counterclaim, claiming damages for the results of the plaintiff's alleged negligence arising out of the same affair.

Upon the trial the plaintiff's counsel, among other requests, asked the court in writing to instruct the jury as follows: "1. This action is brought to recover damages by reason of the claimed negligence of the defendant in leaving, or causing to be left, a horse and wagon upon one of the public highways of the borough of West Haven, called Savin Avenue, in such a position and under such circumstances as to be dangerous and an obstruction to the highway at that place; and if the jury find that on the night in question the defendant left standing in the public highway known as Savin Avenue, in the borough of West Haven, a horse and milk wagon, with a large number of milk bottles, so that the horse and wagon were diagonally across the street, and left in such a manner without any one in charge of it, and without any light thereon to warn travelers of the danger, it was an obstruction to the highway; and if on account of its being there the plaintiff's horse and wagon were injured while the plaintiff's team was being driven along the highway with reasonable care, the plaintiff is entitled to recover. 2. While under some circumstances a person may leave his horse and team in the highway for the purpose of making a temporary stop, yet it must always be done with that reasonable degree of care and prudence that men of ordinary prudence would use in regard to their own affairs; and where the highway is one

that is much used, and there is a liability of frequent passing, and the team is left in an obscure or dark place where there is less opportunity to observe it, it is the duty of the person thus leaving the team to exercise reasonable care and precaution to warn travelers of its presence, either by leaving some person in charge of it, or placing a warning light thereon, so that travelers may know of the presence of the obstruction in the highway. 3. While under some circumstances a person may leave a horse attached to a wagon in the public highway, and necessary for the purpose of transacting business, it should always be so placed as to obstruct the traveled path as little as possible ; and to allow a horse and wagon to stand in a much used public highway diagonally across the street so that the hind wheels project past the center of the street, is a use of the highway which is not warranted by law and justifiable ; and if the jury find that the horse and wagon was left in the highway as is described by the plaintiff's witnesses, diagonally across the street, the head of the horse being at or near the gutter with the hind wheels of the wagon out past the center of the traveled highway, then this act was a negligent and improper obstruction of the highway, and the plaintiff is entitled to recover if he used ordinary care himself."

The finding contains the following respecting the rulings of the court upon the introduction of testimony : " (*a*) The plaintiff produced in chief Elbert Wilcox, one of the parties in charge of plaintiff's team, who testified on his direct examination to having been with the team on the night in question, driving down Savin Avenue, and as to the circumstances of said collision. On cross-examination he was asked as to the time he took said team, the place he started from, and the route he had taken from New Haven to Savin Avenue ; and further, on said cross-examination having testified that he had been in a place kept by one Henry McCabe, he was asked the following question : Q. ' What does Henry McCabe do ? ' Objected to as not material in this case. Admitted. Exception. To which the witness replied that the said Henry McCabe kept a saloon. (*b*) Further, on cross-

examination of said Wilcox, he having testified that he did not see the lantern nor defendant's team before the collision occurred, was asked the following questions: Q. 'Did you say, or hear anybody around there say, that they thought that that lantern they saw was a bicycle lantern?' Objected to. Admitted. Exception. A. 'I do not remember. Q. You would not say it was not said, would you?' Objected to as hearsay. Admitted. Exception. A. 'I do not remember.' (*c*) And further, on cross-examination of said Wilcox, he having testified on cross-examination that he telephoned for and requested one Doctor Kelly, a veterinary surgeon, immediately after the collision occurred, to go to West Haven for the purpose of treating his horse, and that he had received a bill for Doctor Kelly's services, was asked the following questions: Q. 'And you have not paid it?' Objected to. Admitted. Exception. A. 'I have not paid for the use of the team there. Q. And if Mr. Crosby don't pay it you will have to pay it, won't you?' Objected to. Admitted. Exception. Q. 'I shall feel obliged to make it good to him. I hired the team: it was in my possession.' (*d*) On the redirect examination said Wilcox was asked as follows: Q. 'Now, you were asked if there was any other shade tree on other parts of this street up and down there. Any other shade tree that had a horse and wagon left standing directly under it?' Objected to. The Court: 'No such question or evidence.' Ruled out. Exception. (*e*) The plaintiff produced in chief one Revere as a witness, who on his direct examination had testified that on the night in question he was riding down Savin Avenue in company with, but a little ahead of, another bicycle rider (Brummer), some half hour before the time of the collision by plaintiff's team with defendant's team, and that Brummer had run into the carriage of the defendant, which was diagonally across the street, as set forth in the finding, and asked him further on direct examination the following question: Q. 'Now, was there anything to indicate that that carriage was there, until you got on to it with your bicycle?' Objected to. Ruled out. Exception. Said Revere further testified on the direct

examination that there were tracks of a wagon on said high-way which would indicate that the wagon had come out of the driveway of defendant's premises, and partly turned into the street. On the cross-examination he was asked the following question: Q. 'When you saw this wagon it was not in such a position it could have come out of the driveway, could it?' Objected to as not calling for where the wagon was. Admitted. Exception. A. 'I would have to give an expert opinion if I answered it. I don't think I can.' (*f*) Said Revere having testified on direct examination that af-ter the collision of Brummer's bicycle with the defendant's car-riage he had a conversation with a young man who was there and had asked him who was owner of the team, was on cross-examination asked the following questions: Q. 'I asked you if you didn't want to talk with one of the boys that had been in the road. What had you done: had you done anything to him?' Objected to as immaterial, irrelevant, incompetent. Admitted. Exception. A. 'Nothing at all. Q. Now, what did you say? A. Who owns that team? Q. What did he say? A. None of your business. Q. What did you say to that? A. I want to know. Q. Go on, and tell the rest of it.' Exception. A. 'I want to know who owns this team; he says, You will not know; so he kept arguing back and forth.' (*g*) Said Revere on cross-examination having testi-fied further that after the accident happened he had been 'ar-rested by Mr. Crosby for breach of the peace, was asked on redirect the following questions: Q. 'Had you done any-thing to be arrested for?' Objected to. Ruled out. Ex-ception. Q. 'So far as you know, had you done anything for which you should have been arrested?' Objected to. Ruled out. Exception. Q. 'Had you not done anything that night to Mr. Crosby, or to any person there?' Objected to. Admitted. A. 'No act of violence, no.' (*h*) The defendant produced in chief as a witness one Palmer, who upon his direct examination testified that he lived across the street from defendant's house, and that at about nine o'clock on the evening of the accident he heard a horse go by, and some one shout, and that he went out onto the street and

over to the place of the accident; he was asked further on direct examination the following questions: Q. 'What did you go there for?' Objected to as not material. Admitted. Exception. A. 'I heard a team, a horse. I heard a noise, horse going by, and I heard some one shout: naturally, I went out to see what was the matter. Q. Did the noise you heard give you to understand that the horse was going slow, or fast? A. I should say it was going **fast.**' Objected to. Admitted. Exception."

*Charles S. Hamilton*, for the appellant (plaintiff).

*Bernard E. Lynch* and *Edwin S. Thomas*, for the appellee (defendant).

PRENTICE, J. The assignments of error, in so far as they relate to the charge and refusals to charge, may, with one or two exceptions, be classified into three groups, to wit: (1) those which criticize the court's instructions as to what constitutes negligence; (2) those which complain of the court's refusal to instruct the jury as a matter of law that certain conduct in the defendant would constitute negligence; and (3) those which complain of the action of the court in submitting to the jury, as a question of fact to be determined by them upon the evidence, whether or not the defendant was guilty of negligence in the premises.

In that portion of the charge where the trial judge undertook to define and describe negligence, he said: "Now, negligence, as the term may be applied in this case, gentlemen, it may be stated, is another term for want of ordinary care. At every turn of this case, gentlemen, you will be confronted with the question was this act, was that act, whether of the plaintiff or the defendant, such as an ordinarily prudent man would not have done, or was this omission or that omission to act, an omission that could not be predicated of a man acting prudently in the circumstances of the case. Now then, ordinary care is the care which may be reasonably expected of a man in the given circumstances. It is not always

the same degree of care. A reasonable man in some situations will exercise extraordinary care, and he should do it. And it is yet ordinary care in reference to the circumstances or exigencies of the case; we sometimes say, and well enough, that the greater the danger the greater the necessity for the care. That is a practical consideration for you to take into account with reference to these claims on the one side and the other, as to the situation there, and the occasion demanded for extraordinary attention and care."

The plaintiff concedes that certain of the statements thus made were correct in law. He, however, extracts for criticism two sentences or parts of sentences. Aside from the unfairness of this method of criticism, we fail to see the force of it in either case. It is objected that the court erred because, in speaking of omissions which " could not be predicated of a man acting prudently in the circumstances of the case," he did not qualify the man thus referred to as an ordinarily prudent one. Analyzing this contention, it is, in effect, that prudence of action does not furnish a sufficient standard of duty; that the only prudence which satisfies legal requirements is the prudence of an ordinarily prudent man. This assumed distinction, between prudence in fact when exercised by one man and by another, is too subtle for our appreciation. We had supposed that the law was ever well satisfied with such action as was in fact prudent under the circumstances.

The second passage held up for criticism is the following: " Now then, ordinary care is the care which may be reasonably expected of a man in given circumstances." We infer from the criticism that when the law exacts reasonable care as a rule of conduct, it exacts something which may be in excess of what might be reasonably expected of a man. If so, the law is indeed a hard master. We assume that the law expects only what may be reasonably expected under given circumstances.

Possibly more precise and illuminating language could have been used in some passages of the charge upon this subject than that which the court employed; but we see no

statement of bad law, and certainly no statement which, when taken in connection with the context, could by any possibility have made the charge an improper or misleading one.

The other errors assigned respecting the charge, whether they relate to the charge as given or to the requests refused, call for the consideration of only one general question. That question is whether, under the facts of the case, the court performed its duty, and its full duty, in leaving the questions of negligence and contributory negligence to the jury, to be determined as questions of fact upon the evidence, or whether it should have gone further and, in response to the requests of the plaintiff, told them that certain conduct enumerated in the requests and being the conduct of the defendant, as the plaintiff claimed it, constituted negligence as a matter of law.

The facts of the case on trial were in dispute. The jury alone could determine them upon the conflicting testimony. The court did not have an established or conceded state of facts to deal with. There was no escape, therefore, from a submission to the jury of the evidence bearing upon the questions of negligence, with directions to find the facts and thereon, under proper instructions as to the rule of duty, to determine as a question of fact whether or not that duty had been performed. This much is clear.

But the plaintiff contends that the court should, in response to his requests one and three, have taken certain aspects of the case from the jury and passed upon them as matters of law, and that in not doing so and in submitting the whole question of the defendant's negligence to the jury, it erred. The principles which underlie this contention and which are decisive of it, were so exhaustively discussed by this court in *Farrell* v. *Waterbury Horse R. Co.*, 60 Conn. 239, that a rehearsal of them is unnecessary. Neither of the requests embodies a statement of fact so exhaustive of modifying possibilities and so extreme in its character as to create that unusual condition which occasionally justifies a court in pronouncing judgment thereon as one of law. There is no standard of duty in the premises specially imposed by statute or

rule of law. The only breach of duty claimed is one of the general duty to exercise reasonable care under the circumstances. There is no aspect of the case disclosed by the record, and none furnished in any request, which does not call for the application to the facts of this general rule of conduct, and that rule alone, requiring the trier to put himself in the place of the parties and exercising a sound discretion based upon experience, not only upon the question of what the parties did or omitted to do but also upon the further question as to what a reasonably prudent man would have done under the circumstances. The facts and circumstances were of such a character that honest, fair-minded men might come to different conclusions thereon. The inference or conclusion of negligence was therefore one to be drawn by the trier, and not by the court as a matter of law. *Farrell* v. *Waterbury Horse R. Co.*, 60 Conn. 239; *Bunnell* v. *Berlin Iron Bridge Co.*, 66 id. 24.

The court below, therefore, acted properly in submitting the whole question of negligence to the jury, giving them, as it did, instructions suitable for their guidance in determining the issues involved under the various claimed states of fact. It instructed them as to the rights and duties of the members of the general public in the use and occupancy of a highway, and left them to determine whether or not the defendant's conduct in the exercise of those rights and in the performance of those duties, whatever it should be found to have been, was that of a reasonably prudent man.

A casual glance at the requests made emphasizes the propriety of the court's action in not complying therewith. It is too apparent for argument, that a charge which held that the facts enumerated in either one, regardless of all possible explanatory, justifying, or modifying facts or circumstances, must be held to conclusively impute negligence, would have been inexcusably improper. The absurdity of such instructions would have been no less manifest than that attributed by us in *Park* v. *O'Brien*, 23 Conn. 339, to a request of similar character made under similar circumstances.

There remains to be noticed the second request, which has

not been directly involved in our discussion thus far. Concerning this request the obvious criticism is that it is too general and sweeping in its terms and would be likely to have been misleading. It did not properly recognize excusing or modifying circumstances. In so far as the request embodies good law, the charge as given suitably met the situation.

The objection to the charge contained in the 13th assignment of error, to the effect that the court failed to lay down any rules of law which would be an adequate guide to the jury in determining under what circumstances a horse and wagon left in the public highway would be an obstruction to the highway, is, we think, without foundation.

Most of the assignments of error relating to the rulings of the court upon the admission of testimony, concern matters of minor importance ; none require extended discussion.

The question to Wilcox, as to the business of McCabe, was one quite within the discretion of the court to admit.

Those to the same witness, to which he replied, " I do not remember," became, by reason of the answers, entirely harmless, even if improperly admitted. Questions alone do not make testimony.

The question to the same witness, concerning the payment of the veterinary surgeon's bill, was properly admitted for the purpose of showing interest. If it had no bearing of this kind, it was certainly absolutely harmless.

The action of the court in excluding the question upon the redirect examination of the same witness, was proper. If the question involved a false assumption of fact, or unauthorized statement of fact, it was the court's duty to promptly disallow it. For the purpose of the ruling it was for the court to decide upon the question of fact involved. If the plaintiff doubted the court's statement of fact he should have appealed to the stenographer's minutes. He made no such appeal. The statement, furthermore, is fully borne out by the record.

The first question to Revere was leading in form, and in its latter part involved an implication, if not direct assumption, of a fact not supported by evidence. Besides, the

defendant made no claim that there was, at the time in question, any light or other indication, other than the team itself, that it was where it was. The defendant's claim was that the light was brought out later. The ruling of the court excluding this question was therefore neither erroneous nor by any possibility harmful.

The question to Revere as to the location of the wagon was properly admitted. It called for the witness' opinion upon a matter of ordinary everyday observation and knowledge. It did not call for an expert opinion. *Sydleman* v. *Beckwith*, 43 Conn. 9, 13.

The testimony elicited from Revere upon cross-examination, concerning his conversation with a young man, was most distinctly harmless to the plaintiff.

The two questions propounded to Revere upon redirect and excluded, when taken in connection with the following one admitted, furnish no ground whatever for complaint. They called for the witness' construction and opinion upon a matter of law as applied to undisclosed facts. They did not call for a simple recital of fact. When a proper question, which limited the office of the witness to a statement of facts, was put, the court admitted it.

The question to Palmer called for the exercise of his judgment and his opinion therefrom as to the speed at which a horse was traveling along the highway, judging from the sound. The question was a proper one to put to a non-expert witness. *Sydleman* v. *Beckwith*, 43 Conn. 9, 13. It is no objection to the question that the judgment called for was one based upon the exercise of the sense of hearing and not of sight. The law makes no such distinction between the senses.

There is no error.

In this opinion the other judges concurred.