## OLD DOMINION STAGES, Inc., v. CONNOR.

### No. 6805.

United States Court of Appeals for the District of Columbia.

Argued March 15, 1937.

Decided April 5, 1937.

Petition for Reconsideration Denied April 15, 1937.

Henry I. Quinn, of Washington, D. C., for appellant.

H. L. McCormick and Albert W. Fox, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

### GRONER, J.

This is an automobile collision case. Appellant is the owner of a motorbus line operating in Virginia. Appellee was a passenger in an automobile driven by her husband at the time of the collision.

Briefly stated, the facts are these: In the afternoon of the 10th of July, 1931, the President of the United States left Washington by automobile on a week-end trip to Rapidan Camp in Virginia. His car was followed by the car of the secret service operatives, which in turn was followed by that of the President's secretary, and these three official cars by two containing newspaper correspondents. The last car was driven by Frank W. Connor, appellee's husband. The five cars kept together until they reached Annandale in Fairfax county, and at that point appellant's bus drove into the Fairfax Road behind the President's car. About three-quarters of a mile below that point the

secret service car passed the bus and drew in behind the President's car, and shortly thereafter the car of the President's secretary passed the bus. The first newspaper car continued behind the bus for a distance of approximately two miles, running at a speed between fifty and sixty miles an hour. This car then passed the bus and continued on ahead approximately 150 yards when appellee's husband, driving the last car, accelerated his speed, blew his horn, and started to pass the bus. In the act of passing, his left wheels ran off the concrete onto the dirt shoulder and continued to run with two wheels on the soft ground for a very short distance when the car was brought back on the pavement and, having passed the bus and in the act of returning to the right-hand side of the road in front of the bus, was hit by the bus and overturned and appellee severely injured.

The declaration alleged a single ground of negligence, namely: "That thereupon the automobile in which plaintiff was a passenger passed said motor bus of defendant, and when said automobile was safely clear of said motor bus the said automobile proceeded to the right side of said highway and upon reaching the right side thereof and while moving at a rate of speed of at least thirty-five miles per hour the said motor bus of defendant, while running at a rate of speed in excess of thirty miles per hour, ran into, collided with and overturned said automobile. * * *"

Appellee testified that after the bus came in between the President's car and the secret service car her husband continued to drive his car behind the other newspaper car until the latter had passed the bus; that her husband's car then passed and turned in front of the bus and then the crash came and she knew nothing after that.

Her husband testified that he had been assigned by his newspaper to accompany the President on a week-end trip to Rapidan Camp; that he had invited his wife to make the trip with him; that he was driving his car behind the other newspaper car about 150 feet; that that car pulled around the bus and that he gradually closed up the distance between his car and the bus and, when the road was clear of traffic coming toward him, signaled the bus of his intention to pass, but before he got all the way past he found his left wheels off the pavement and that he got safely back

on the road and ahead of the bus and shortly thereafter the crash came and knocked him off the right side. On cross-examination he said that he came back on the pavement on a "mild" angle and that his car was not entirely straightened out when the collision occurred.

Mr. Pickens, the driver of the other newspaper car, testified that his car passed the bus at sixty-two miles an hour and that after he got by he saw in the mirror the Connor car pull around and start by the bus; that the car came in at an angle toward the bus and was hit just as it was pulling into its side of the road; that he was unable to say whether the Connor car got over on its own side of the road and in front of the bus before the collision took place.

Mr. Hurd, another newspaper correspondent riding in the Pickens car, testified that he was looking out of the rear window of the car to see if the Connor car would get around safely; that he saw the car come around the bus and get back on the highway in front of the bus and then there was a crash and the car turned over; that he was unable to say "unqualifiedly" that the Connor car got out of control but he would say that it "jounced around" and that Mr. Connor obviously had a difficult time keeping it in control but he got back on the roadway; that the car did not come back on the roadway at a "mild angle"; that it could not at the speed it was traveling; it came back at high speed in front of the bus; the car wiggled and zigzagged as if he (Connor) was having a difficult time, and this occurred just as he was passing the bus; that he saw the Connor car get into approximately a position in front of the bus as Mr. Connor was trying to swing it clear; that he could not say whether it was just getting back into the right-hand lane or whether it had gotten there, but he knows it was in front of the bus. In another part of his examination he said that the Connor car was shimmying or careening as it came back on the paved road.

Another newspaperman, Mr. Mallon, testified he, too, looked through the rear window of the Pickens car and saw the Connor car pass the bus coming over to the center of the road to the right-hand side, when the bus hit it and turned it over; that the front part of the Connor car was then on the right hand side of the road.

Mr. Durno, another newspaper correspondent, riding on the seat with the driver in the Pickens car, did not see the accident. He testified, however—without objection—that a few hours later when he and the other newspapermen were discussing the mishap, Mr. Hurd told him substantially that when Connor was attempting to get his wheels back on the paved road the concrete edge of the road threw the car almost crosswise the road and in front of the bus.

The trial court refused a motion for a directed verdict at the close of plaintiff's case. Appellant then introduced a number of witnesses, including the driver of the bus, who testified that it was running at a lawful rate of speed and well over on the right-hand side of the road and that the Connor car, after passing the bus, turned in front of the bus and just nipped the end of his bumper and ran into or was thrown into the ditch on the right hand side. There were no marks or dents on the bus.

The motion for a directed verdict was renewed at the close of all the evidence and again denied, and the jury returned a verdict in favor of Mrs. Connor for $5,000.

■ The Virginia traffic laws provide that the driver of a vehicle overtaking another proceeding in the same direction shall pass at least two feet to the left and shall not again drive to the right side of the highway until safely clear of the overtaken vehicle. The overtaken vehicle is required, when warned, to give way to the right in favor of the overtaking vehicle and not to increase speed until the overtaking vehicle has safely passed. The Virginia law (Code Va.1930, § 2145 (4) permits a speed of forty-five miles an hour, and "reckless driving" is defined as "exceeding a reasonable speed under the circumstances and traffic conditions obtaining at the time." The federal courts in the District of Columbia may take judicial notice of the Virginia statutes. Moore v. Pywell, 29 App.D.C. 312, 9 L.R.A.(N.S.) 1078.

■ From what has been already said, it is apparent that both the Connor car and the motorbus were exceeding the allowed speed of forty-five miles per hour; but since the negligence of the driver of the Connor car is not, as we think here, imputable to appellee,[1] the single question in this aspect of the case is whether the acci-

dent is attributable in whole or in part to the negligence of the bus driver. The charge is that, after the Connor car had passed the bus and had proceeded to the right side of the highway and while it was moving at a lawful rate of speed ahead of the bus, the bus, running at an unlawful rate of speed, collided with and overturned it. Having planted herself on this single ground of negligence, Mrs. Connor was obliged to show the particular negligent act complained of in order to recover. This, of course, grows out of the rule that the proof must be responsive to the allegation. If, therefore, there was no evidence on this precise point upon which a jury could properly find a verdict, the case should have been taken from the jury. On the other hand, if there was substantial evidence to support Mrs. Connor's charge, even though the weight of the evidence was on the other side, a verdict should not have been directed—for it is for the jury and not the court to weigh the evidence and pass upon its credibility. Here the question is close for, while it sufficiently appears that the bus was being driven at an unlawful speed, the causal connection between the speed and the collision is not so clear. But since in our opinion the judgment must be reversed on another ground, and since also in a new trial the evidence may be different, we pass this assignment by.

■ After all the evidence was introduced, the defendant asked the court to instruct the jury as follows: "The jury are instructed that in order to return a verdict for the plaintiffs they must find by a preponderance of the evidence that the plaintiff's automobile was driven past defendant's motor bus, and had reached the right side of the highway and was clear of said bus, and while proceeding on its right side of the road the bus did collide with and overturn plaintiff's said automobile." This instruction was drawn in the terms of the charge in the declaration. The trial court refused to give it, and we think this refusal was harmful error. This particularly appears when we consider the evidence, admitted over objection, of other acts of negligence on the part of the driver of the bus. For instance, the court permitted the plaintiff to show that, as the several cars in the President's entourage passed, the bus refused to give way and

---

[1] Miller v. Union Pacific R. Co., 290 U.S. 227, 54 S.Ct. 172, 78 L.Ed. 285.

forced some of the cars off·the paved portion of the road. There was also evidence that one of the occupants of the secret service car, as his car passed, warned the bus driver that the President's party were passing and that he should give way. The necessary effect of this evidence was to direct the jury's mind away from the single allegation of alleged negligence, and the court in the general charge accentuated this by stating the question to be "whether or not this defendant bus was operated negligently by the driver, and whether the negligent operation of the driver resulted in this injury." All of this would have been proper if there had been a general allegation of negligence in the operation of the bus, but in view of the limited character of the allegation, we think that the effect of leaving the larger question open, both by an instruction that recovery could be had if there was negligent operation and by refusing the instruction which directed the mind of the jury to the single specific allegation, was certainly confusing and prejudicial—to what extent we can only guess.

Since the objection to the confusing testimony, to some of which we have adverted, was unavailing, appellant had but one opportunity to avoid its effect, and that was by having the jury charged in clear terms that plaintiff could recover on one ground and one only—for "it is a fundamental rule of law that, where the declaration alleges specific acts of negligence, the court must charge on the specific acts and confine the issues to·them." Grand-Morgan Theatre Co. v. Kearney (C.C.A.) 40 F.(2d) 235, 237; Frizzell v. Omaha Ry. Co. (C.C.A.) 124 F. 176, 178. In this case we have examined the entire charge to be sure that it did not contain enough to bring it within the rule, but we are unable to say that it does; and so we are convinced that the jury could not have realized the limitation which the pleadings imposed upon them, but must have felt instead that if on the whole case it appeared that the bus driver was negligent they might properly find for plaintiff. We think the action of the court below in permitting the jury to wander into other fields and, so far as we can tell, predicate its verdict on evidence unrelated to the charge upon which plaintiff chose to found her case, and the refusal of the court to allow defendant's instruction—which clearly stated the crucial issue which the jury must

determine—ought to be corrected by a new trial.

Reversed and remanded for further proceedings not inconsistent with this opinion.

ROBB, Associate Justice, dissenting.

In my view there was ample evidence that the bus was being driven negligently and that that negligence resulted in the overturning of the Connor car and the injury to Mrs. Connor, appellee. The opinion states: "Here the question is close for, while it sufficiently appears that the bus was being driven at an unlawful speed the causal connection between the speed and the collision is not so clear." This court usurps the functions of the jury.

It is also my view that the charge of the court, taken as a whole, amply protected the rights of the defendant. The drivers of these huge busses—veritable juggernauts, and a menace to the public—should be given to understand that the drivers of other vehicles have rights. The verdict of the jury was right and the judgment should be affirmed.