Almon Rollins LONG, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12024.

Criminal Court of Appeals of Oklahoma.

Sept. 22, 1954.

554

Gomer Smith, Jr., Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Ass't. Atty. Gen., for defendant in error.

JONES, Judge.

The defendant, Almon Rollins Long, was charged by an information filed in the County Court of Comanche County with the offense of driving an automobile recklessly on a highway; a jury was waived and the case was tried to a special judge who found the defendant guilty and sentenced him to pay a fine of $100 and costs.

The single issue presented on appeal is whether the trial court erred in permitting the highway patrolman to testify over the objection of counsel for the accused to the point of impact or place on the highway where the collision between the automobile being driven by the defendant and the one being driven by one King occurred.

The collision occurred at about 9:30 a. m. The proof of the State showed that one Creed King was driving his automobile in a westerly direction and that he was emerg-

ing from an S-curve about 1.6 miles east of Cache when he observed the car of defendant approaching from the west at a speed of about 70 miles an hour; that when defendant's car reached a point about 100 feet from the King automobile, it started at about a 45° angle across the highway and collided with the King automobile on the north side of the center line of the highway.

Lt. C. W. Adams, a highway patrolman, reached the scene of the collision shortly after it occurred. The cars had not been moved. He testified to the relative positions of the automobiles as he observed them upon his arrival at the scene of the collision. He detailed his experience as a patrolman in investigating accidents and the skill he had obtained from such training and experience as a patrolman, and based upon his training and experience he was allowed to state his conclusion as to where the impact occurred based upon his personal observation of the facts, especially relative to skid marks which he saw on the pavement. During the testimony of this witness the record discloses the following occurred:

"Q. Based on your experience as a trooper and as a Lieutenant in the Highway Patrol, did you find from investigating these various collisions that certain physical evidence was always found at the point of impact by vehicles, such as glass or dirt or any other actual objects that marked the point of impact?

"Mr. Smith: Objection, as leading and suggestive; incompetent, irrelevant and immaterial.

"The Court: Overruled. A. Yes, sir.

"Q. When you investigated the collision between the King and Long vehicles, what physical evidence was on the ground, insofar as rubbish, dirt, glass, etc. are concerned?

"Mr. Smith: Objection, as leading and suggestive and incompetent, irrelevant and immaterial.

"The Court: Sustained. Lieutenant, state what, based upon your experience, led you to formulate an opinion as to where the impact occurred. A. Marks left by the tires from both vehicles were plainly visible at the point of impact. The tire marks were left from the point of impact to where they stopped.

"Mr. Smith: Objection to the answer; he is not qualified to testify as to where the impact occurred.

"Mr. Cavanagh: He saw certain skid marks leading from both directions and where these marks met.

"The Court: Objection overruled.

"Mr. Smith: We further object to counsel attempting to put words in the witness' mouth.

"Mr. Cavanagh: We apologize to the Court. I thought that was what he stated.

"The Court: Continue your interrogation.

"Mr. Smith: Note our exception.

"The Court: Allowed.

"Q. Where was the Long vehicle from the point that you believe was the point of impact? A. Across the center line, approximately half and half; a little more to the north side than to the south.

"Q. When we speak of the Long vehicle, we are speaking of the Chrysler. The King vehicle is referred to as the Plymouth. A. Yes, sir.

"Mr. Smith: We object to the question and answer on the grounds that no proper predicate has been laid as to the expression of the witness.

"The Court: Overruled.

"Mr. Cavanagh: I was asking how far was the vehicle from the point of impact.

"Mr. Smith: I withdraw the objection.

"Mr. Cavanagh: My question should have been: How far was Long's vehicle from the point of impact after it came to rest?

"Mr. Smith: May I have a ruling, in the light of developments, as to his misunderstanding. I request a further ruling and clarification as to the objections I made as to the point of impact, to the question previously propounded.

"The Court: I have ruled that, based upon his testimony and his long experience as an investigator and officer, he has laid the proper predicate to opinionate as to the physical objects at the scene.

"Mr. Cavanagh: You are permitting him to testify as to the point of impact?

"The Court: That is correct.

"Mr. Smith: Exception, please.

"The Court: Exception allowed.

"Q. How far was the Long vehicle from the point of impact?

"Mr. Smith: I want to renew my objection to any question relating to or assuming any given point of impact, for the reason that the witness has never laid the proper predicate.

"Mr. Cavanagh: Strike that question. Where was the point of impact with relation to the center line of the highway?

"Mr. Smith: Objection to that question. No proper predicate has been laid. It's incompetent, irrelevant and immaterial. If the Court will give me an exception, and note that it is perpetual, to all of this line of testimony, I'll appreciate it.

"The Court: Overruled and exception allowed. We will treat your objection as perpetual. Answer the question, please. A. The Long vehicle was across the center line and approximately on the centerline, with the King vehicle just a little north of the center line. The Long vehicle was astraddle the center line at the point of impact.

"Q. Was the Long vehicle north or south of the center line? A. Right on the center line."

Counsel for the accused in his brief cites the following cases as sustaining his position: Maben v. Lee, Okl., 260 P.2d 1064; Washita Valley Grain Co. v. McElroy, Okl., 262 P.2d 133; Rodgers v. Oklahoma Wheat Pool Terminal Corp., 186 Okl. 171, 96 P.2d 1040; Hadley v. Ross, 195 Okl. 89, 154 P.2d 939.

Counsel for the State in his brief contends that the cases cited by the appellant are not in point because of the difference in the factual situation involved and cites the case of Andrews v. Moery, Okl., 240 P.2d 447, as being more nearly in point.

█ It is established law that an expert should not be allowed to give opinion testimony where the subject is one of common knowledge as to which facts can be independently described to the jury and understood by them and they can form a reasonable opinion for themselves. 20 Am.Jur. 651. However, it is equally well established that in relation to matters relevant to the issues of a case, when it is not possible or practicable to place before the jury all of the primary facts and circumstances in such way as to enable the jury to form an intelligent conclusion from them, qualified witnesses who have had means of personal observation may state their opinions, conclusions, and impressions formed from such facts and circumstances as come under their observation. 20 Am.Jur. 640.

In the cases cited by counsel for the appellant to sustain his contention, the testimony of the alleged expert was held inadmissible where it was based upon his record of investigation which included hearsay statements given to the officer. In Maben v. Lee, supra, [260 P.2d 1065] which is the principal case relied upon by appellant, the Supreme Court of Oklahoma stated:

"In a negligence action growing out of automobile accident it was reversible error to admit, over defendant's objections, evidence of highway patrolman who investigated accident in course of his official duties, wherein he expressed his opinions and conclusions, based principally upon hearsay evidence, and purported to fix responsibility for such accident."

The cases cited by the appellant supra do not appear to us to be in point with the proposition herein involved but the reasoning of the Supreme Court has been of assistance in deciding the question here presented. Undoubtedly the determining factor in each of those cases was the proof that the conclusion of the expert was based partially upon hearsay statements made to him by third parties concerning certain al-

leged occurrences at the place of collision. In the instant case no such hearsay evidence was involved. Here the testimony of the highway patrolman was based upon his personal observation of the relative positions of the automobiles at the scene of the collision and skid marks discernible upon the pavement. In Andrews v. Moery, supra, [240 P.2d 449] two officers appeared upon the scene shortly after the collision and made an investigation. In the opinion the Supreme Court stated:

"They both testified as to the width of the pavement at the point of the impact; that the pavement was smooth and dry. They noticed the condition and position of both cars after the accident occurred. They found dirt, glass and other debris on the street where the impact occurred. Plaintiff's car was located about 50 feet beyond the point of impact. They saw skid marks which in their opinion were made by the truck leading from a point where the brakes were apparently applied up to the point of impact. They measured the skid marks and found them to be 120 feet in length. Each of these witnesses testified that from experience gained by him as an officer he was able to give a fairly accurate opinion as to the rate of speed the truck was traveling at the time of the collision based on the length of the skid marks and other physical facts found by him to exist. Each stated that in his opinion the truck at that time was traveling at a speed of about 45 to 50 miles per hour.

"The above evidence was admitted over and against objection of defendants urged on the ground that it called for a conclusion of the witnesses and invaded the province of the jury."

After reviewing various authorities, the Supreme Court held that the trial court did not err in the admission of such evidence. The law of the case as shown in the syllabus is as follows:

"Opinion evidence of expert as to speed of truck involved in accident based upon length of skid marks is admissible.

"A witness who had testified that on arriving at the scene of a collision between an automobile and a truck which happened shortly before, but which he did not see, he observed skid marks leading from the place where the brakes of the truck were applied and leading up to the truck, may properly be asked whether in his opinion the skid marks observed by him were made by the truck."

■ Under the rule which permits witnesses to testify to conclusions and opinions drawn from facts observed by them and not capable of being adequately reproduced before the court or jury, the opinions of such witnesses are admissible as to the speed of vehicles before the collision, Andrews v. Moery, supra; the location of a spot where a train struck a steer, Fanning v. Long Island Railroad Co., 2 Thomp. & C., N.Y., 585; as to the relative position of two boats at the time they collided, Patrick v. The J. Q. Adams, 19 Mo. 73; and as to whether the position of a wagon was such that it could have come out of a certain driveway, Nesbit v. Crosby, 74 Conn. 554, 51 A. 550.

■ A statement of the general rules and the citation of cases seemed to make the question here presented one of which disposition may be easily made, but in the application of those rules, the disposition was not so simple. In every criminal case it is the duty of the court or jury hearing the case to attempt to arrive at the truth. Opinion testimony of experts is only admissible in cases of necessity where to arrive at the truth and a proper understanding of the facts in issue requires some explanation of those facts or some deduction therefrom by persons who have scientific or specialized knowledge or experience. In every criminal case the testimony of witnesses involves in a way a conclusion or opinion of the witness. A statement by a witness as to what he had seen is of course a conclusion of the witness but the fact that the testimony of a witness is a conclusion by the witness or that it pertains to the ultimate fact in issue before the court or jury is not alone the test as to its admissibility. It would appear that the trial court should be vested with a dis-

558

cretion as to the admission of such evidence and whether it would aid in determining the truth or whether it would be an improper invasion of the province of the jury.

■ In the instant case the trial court in the absence of a jury was particularly concerned as to where the point of impact was located. Before the patrolman finished testifying the following occurred:

"The Court: I would like to see if I understood your testimony. From your examination of the scene, it is your conclusion, based on the physical facts and your experience as an investigator, that the Long vehicle was across the centerline at the time of the impact? A. It was half and half; a little more to the north than to the actual center."

Evidently the court felt that he was unable to definitely determine as a matter within his common knowledge, based upon the testimony as to the skid marks and debris, the point where the collision occurred. King stated the collision occurred on the north side of the center line of the highway and that defendant was driving his automobile at a speed of approximately 70 miles an hour. The defendant was equally emphatic that the collision occurred on the south of the center line of the highway and that he was operating his automobile at a speed not exceeding 40 to 45 miles an hour while King was coming around the curve "at a high rate of speed." Five photographs taken by a newspaper photographer within a few minutes after the collision occurred were admitted in evidence and the trial court in his summation stated that based upon the photographs and the testimony of the highway patrolman as to the point of impact, he found that the defendant was guilty of reckless driving by driving across the center line of the highway at a high rate of speed and striking the automobile of King. The question here presented might be viewed in a different light if the case had been tried to a jury, but where a case is tried to the court in the absence of a jury, it is presumed that the court in arriving at his decision considered only the competent evidence and disregarded any incompetent evidence that might have been admitted and too, here the court himself elicited the disputed testimony because of a desire on his part to arrive at the truth.

No witness testified for the defendant to corroborate his statement that he was blameless for the collision. On the other hand on cross-examination he admitted that he had been twice convicted for driving an automobile on the public highway while in an intoxicated condition, one of which convictions was sustained in Garfield County and another in Oklahoma County.

■ It is our conclusion that the admission of the testimony of the highway patrolman under the circumstances of this case did not constitute error and that the judgment and sentence of the County Court of Comanche County should be and the same is hereby affirmed.

POWELL, P. J., and BRETT, J., concur.