[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Rita Vogt ("wife") instituted this action in May 1989 against the defendant Richard Vogt ("husband") seeking a legal separation, alimony, a division of property pursuant to General Statutes 46b-81,[1] counsel fees and such other and further relief as law and equity may provide. This matter which was claimed to the limited contested list was referred to the undersigned for hearing and judgment. The amended complaint[2] contains the following allegations all of which are admitted[3] by the husband. The parties were married on May 14, 1977 in North Branford, Connecticut. At the time of the instituting of this action the wife had been a resident of Connecticut for more than twelve months. There are no minor children issue of the marriage or born to the wife since the date of the marriage. The wife is not a recipient of state welfare assistance. The marriage of the parties has irretrievably broken down. Accordingly, a decree of legal separation is entered.
There are no pendente lite orders of the court with reference to the plaintiff's support or alimony but the parties entered an agreement in September 1989 whereby the husband was to pay the wife the amount of $180.00 per week. This was to cover food and certain household sundries for her personal use and the husband agreed to continue to pay other household expenses including the mortgage and taxes. The court (Mihalakos, J.) did enter a pendente lite order on the wife's motion for an allowance to prosecute that the husband pay the wife the sum of $2,200.00 as such allowance. The parties did not separate and continue to live in the marital home at 15 Pomps Lane in North Branford although in separate accommodations. The defendant's answer to the plaintiff's amended complaint, as noted, admits all its allegations including the irretrievable breakdown of the marriage. The parties, however, are in dispute over the assignment of property, an alimony award to the wife and an award of counsel fees for her pursuant to General Statutes 46b-81, 46b-82[4] and 46b-62[5] respectively.
At the hearing before the undersigned the wife and the husband were the only witnesses that testified. The court had the opportunity to assess their "appearance and attitude" as they testified. See Levitson v. Levitson, 182 Conn. 19, 23, CT Page 2408 437 A.2d 1961, 1980; LaBella v. LaBella, 134 Conn. 312, 318,57 A.2d 627 (1948). Several exhibits were admitted into evidence. The evidence generated questions of credibility. See Beede v. Beede,186 Conn. 191, 195, 440 A.2d 283 (198Z); Smith v. Smith,185 Conn. 491, 493, 441 A.2d 140 (1981). The trier may believe all or part of the testimony of a witness. Smith v. Smith,183 Conn. 121, 123, 438 A.2d 842 (1981). Moreover, the court is not bound by the uncontradicted testimony of any witness, Bieluch v. Bieluch, 199 Conn. 550, 555, 509 A.2d 8 (1986); Acheson v. White, 195 Conn. 211, 217, 487 A.2d 197 (1985); and in "evaluating such testimony, the trial court must assess the credibility of the testifying witness and consider the presence or absence of corroborating evidence." Bieluch v. Bieluch, supra, 555-556. "Testimony that goes uncontradicted does not thereby become admitted and undisputed; . . . nor does the strength of a witness' belief [in it] raise it to that level." Stanton v. Grigley, 177 Conn. 558, 563, A.2d (1979). The interest of any witness may also be considered on its issue of credibility. Buonanno v. Cameron, 131 Conn. 513, 515,4 A.2d 107 (1945); Nesbit v. Crosby, 74 Conn. 554, 564, 51 A. 550
(1902).
Certain background circumstances may usefully be set out at this point. The wife is presently fifty-two years old and the husband is fifty-six years old. Both the wife and the husband are practicing Jehovah Witnesses. The present marriage is the second marriage for both, each of them have children by their first marriages. All of these children are now adults. The parties first met early in 1973. At that time she resided across the street from the husband's auto repair business on Foxon Road in North Branford. At that time her four children, then aged 14, 13, 12 and 10 resided with her. She and the defendant began living together. In 1974 the parties, together with her children, moved into a house on Clear Lake Manor Road ("Clear Lake") in North Branford which he had built on land he had purchased in 1972. A daughter of the husband also lived there for about one year, around 1975. That daughter has since married. About the end of 1976 the wife and her children moved out of the Clear Lake house to a rental house in North Branford. The husband later came to her several months thereafter, they discussed why she had left and he told her that he was sorry about his treatment of her. He wanted to resume their relationship and he gave her an engagement ring. She indicated that she did not wish to go back to the Clear Lake house. He agreed and said that another house would be purchased. In April 1977, he purchased a home on Pomps Lane ("Pomps Lane") in North Branford for $53,500.00 upon which he alone executed a bank mortgage for $23,500.00. The parties moved into the Pomps Lane house and were married there on May 14, 1977. The wife's children also returned with her and the children lived there CT Page 2409 with the parties.
In 1979 the husband instituted a divorce action against the wife. The parties later reconciled and as part of their agreement to do so the title to Pomps Lane was put in the names of both the wife and the husband; he alone still remained liable on the mortgage. Although the parties continued to live together there has been no sexual relations since about 1980. For about the same period of time there has been an appreciable lack of communication between them. Anomalously, however, both have since gone together on vacations to such places as Florida, California and Maine. In 1982, on a joint Florida vacation trip a time share condominium was purchased in both names with money from the husband's repair business account. On occasion, they used it together and on occasion the wife used it alone. In 1984 while both were in Florida on vacation visiting friends, the parties bought two building lots at Citrus Spring with money from the husband's repair business account. Title was taken to this property in both names. None of the wife's children live with them as all are now adults and on their own.
The husband continues to own and operate, as he has since 1956, an automobile repair business on Foxon Road where he also sells gasoline. This business is a sole proprietorship and he has no employees. The wife over the years has been employed intermittently as a seamstress, a health aide and an office and a cleaning person. She is also a certified nursing aide having completed a technical school course in that calling. Both the parties are high school graduates. These facts will be developed and supplemented below as necessary.
"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property so long as it considers all relevant statutory criteria. . ." Debowsky v. Debowsky, 12 Conn. App. 525,526, 532 A.2d 591 (1987). "While the trial court must consider the delineated statutory criteria, no single criterion is preferred over the others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of the case. Valante v. Valante,180 Conn. 528, 531, 429 A.2d 964 (1980)." Carpenter v. Carpenter,188 Conn. 736, 740-741, 453 A.2d 1151 (1982); McPhee v. McPhee,186 Conn. 167, 172, 440 A.2d 274 (1982); Jackson v. Jackson,17 Conn. App. 431, 434, 553 A.2d 631 (1989). The court has weighed and considered all the statutory criteria in 46b-81. "Actions for dissolution of marriage are inherently equitable proceedings. Sunbury v. Sunbury, 210 Conn. 170, 174,553 A.2d 612 (1989); Pasquariello v. Pasquariello, 168 Conn. 579, 584,362 A.2d 835 (1975); German v. German, 122 Conn. 155, 161,188 A. 429 (1936). "Serrano v. Serrano, 213 Conn. 1, 12, CT Page 2410566 A.2d 413 (1989) . "The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage." Pasquariello v. Pasquariello, 168 Conn. 579, 585, 362 A.2d 835
(1975); Sunbury v. Sunbury, 210 Conn. 170 , 174 , 553 A.2d 612
(1989); Sardilli v. Sardilli, 16 Conn. App. 114, 118-119,546 A.2d 926 (1988) ("the paramount role of a court when considering domestic relations cases is one of a `court of equity.'") "The purpose of property division `is to unscramble the ownership of property, giving to each spouse what is equitably his.' Clark, Domestic Relations (1968) p. 450." Beede v. Beede, 186 Conn. 191,195 440 A.2d 283 (1982); Pasquariello v. Pasquariello , supra, 583-585. An assignment of property is not to be considered in a "financial vacuum" but rather should be considered in relation to all other relevant financial factors. Krause v. Krause, 189 Conn. 570, 571, 456 A.2d 1204 (1983).
Both parties filed financial affidavits at the time of trial. The wife's affidavit indicates total cash value of all her assets to be $137,900.00 and her total liabilities to be $1200.00 (this is apparently the amount due on her Visa credit card). The husband's affidavit indicates total cash value of all his assets to be $1,015,351.29 and his total liabilities to be $74,755.00. Certain adjustments are necessary to each affidavit based upon the evidence before the court. The adjustment[6] on the husband's affidavit would raise the total cash value of all his assets to be $1,053,601.00.
Briefly, the wife proposes a property settlement, dividing the real property and the personalty such that she would receive $403,169.79 and the husband would receive $675,869.79. As to alimony she proposes that she be awarded $328.00 per week and that he be required to provide medical coverage for her. She also wants him to pay her counsel fees. The husband, on the other hand, proposes that she be assigned property from his securities, savings and other personal investments in the sum of $100,000.00 and that she relinquish any claim or interest to any of the personalty of that nature so remaining. He does not propose that she be awarded any interest in any real property in which he has any interest. As to alimony he proposes an alimony award of $180.00 per week as periodic alimony for a period of two years which shall be nonmodifiable as to amount and term. In addition, he proposes that he defray the cost of her medical insurance so long as that is available to him but not for a period to exceed two years. Having already paid $2,200.00 of her counsel fees, he maintains that each party should pay their own counsel fees, costs and expenses for this action. In discussing the claims as to the property division and alimony the court will endeavor to employ, so far as practicable, the format both counsel appeared to use, including the financial CT Page 2411 affidavits. It should be pointed out that materials in the file indicate that moneys were expended on behalf of the plaintiff for real estate appraisers (for appraisals of the Pomps Lane, Clear Lake Road and Foxon Road properties), certified public accounting firm (in analysis of the parties' joint tax returns for the years ending 1986, 1987, 1988 and 1989) and a physician's report concerning the plaintiff wife. The parties stipulated to the values of the three North Branford properties. None of the experts appeared and testified and no written report of any real estate accounting or medical expert was offered into evidence.
Turning first to the property division the court "shall consider" all the factors set out in 46b-81. The ages and educational backgrounds of the parties have been referred to above. The marriage, as noted, is about thirteen and a half years in duration. It is the second marriage for each and the children of the prior marriage of each are all adults. Her youngest son lived with the parties until two or three years ago. In determining the cause of the breakdown of the marriage, there has been for some time a lack of communication[7]
generally between them. When others are present this is always not so. There has been no sexual relations between them since about 1980. They have taken trips together over the years visiting friends and relatives. Both are members of Jehovah Witnesses and they have consulted with the elders of that group concerning the problems in the marriage without solution. Some time after their 1980 reconciliation they sought counselling, but that was unproductive. She knew very little of the financial affairs of her husband. There was some evidence from the wife concerning some physical abuse which this court finds was not proven by her. It cannot be said that this marriage was a true partnership. The credible evidence, however, is such that the husband must certainly bear the greater responsibility for the breakdown of the marriage. There was evidence concerning the health of the parties some of which the court does not credit.[8] Both parties made observations about their health. The court concludes that the health of each is good.
The husband operates an automobile repair service where he also pumps gasoline. He has been in this business since 1956, it is operated as a sole proprietorship. He has no employees and works at this business for five days per week from about 6 A.M. to 5:30 P.M. When he goes on vacation or is otherwise unable to be there the business is closed. This has been his sole employment from 1956 to this time. The wife, on the other hand, is presently unemployed.[9] In the past, from about 1977 she has been employed as a seamstress, in child care, in elderly care including work at a nursing home, health aide for handicapped child and home and office cleaning. Since the CT Page 2412 marriage she estimates income from her employment in amounts varying from $4,000.00 per years to $7,000.00 per year. Fairly viewed, since 1980 the plaintiff has not devoted much of her time to employment. She has been a certified nurse's aide since 1982 and is still so certified. She maintains that she has a problem since injury several years on her right hand when tendons were stitched wrong. This, she claims, causes her difficulty in turning and lifting patients and the tightness in her right hand is painful at times and has to change hands. She has not since sought employment in the context of her background as a certified nurse's aide. Presently she cleans a doctor's office once a week and spent one day a week babysitting for a grandchild. On the credible evidence, the court determines that the wife is "employable" in the sense that she does possess the vocational skills of a certified nurse's aide, is intelligent and should endeavor to use them in the health care field. In this determination the court factors its recognition of the circumstance that she appears to be intelligent and reasonably adapted to obtaining, with application, employment in the health care sector. See Levetson v. Levetson, 182 Conn. 19, 23,437 A.2d 819, (1980). This is not to say that she is not employable elsewhere. But she has made very little effort to find work. The total net weekly income of $22.50 on her financial affidavit does not, on the evidence, properly reflect her potential earning capacity.
Although the court believes that the wife is employable, it is not only required but Leir end equitable that, given her station, the amount and sources of income she presently has been given weight in determining the orders to be entered. There can be no serious question that her present circumstances in that context, fairly viewed, require an equitable upgrading. This is so because, among other reasons two of the three pieces of realty in which she holds a record interest with her husband are claimed in full by him because, as he argues, he has furnished the money to purchase, improve and maintain the marital home on Pomps Lane as well as his claims that he furnished all the money to purchase the Florida lots. In addition, it is fair to say that the husband's opportunity for future acquisition of capital assets are greater than that of the wife. It, however, cannot be overlooked that if he should be unable to continue working, that potential will be greatly reduced.
The contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates presents interesting considerations. Using round figures gleaned from the evidence, it appears that somewhat over 70% of the value of the husband's assets were acquired by him before his marriage and that about 27% were acquired after his marriage. Moreover, the evidence would CT Page 2413 disclose that he paid for by far the greater monetary consideration (if not all) the assets acquired after the marriage The wife, in terms of he total cash value of her assets, both real and personal, brought none of those to the marriage. The statute provides that "The superior court may assign to either the husband or the wife all or any part of the estate of the other. . . ." General Statutes 46b-81 (a). A fair and equitable distribution of the marital property is to be based upon a consideration of all the statutory criteria. The court "may" consider the amounts contributed by each spouse during the marriage to jointly held assets of each. See e.g. Murphy v. Murphy, 180 Conn. 376, 379, 429 A.2d 897 (1980). Moreover, the "estate" of a party includes not only property held by each, but also any property received by inheritance. See North v. North, 185 Conn. 35, 39 458 A.2d 507 (1981). In addition, courts ought to consider nonmonetary (as well as monetary) contributions of the parties in making property distribution orders. O'Neill v. O'Neill, 13 Conn. App. 300,[10]
306-30), 536 A.2d 978, cert. denied 207 Conn. 806, 540 A.2d 374
(1988); see Blake v. Blake, 207 Conn. 217, 230-232,541 A.2d 1201 (1988).
For convenience of reference, the court, in its orders distributing the property of the parties, will follow generally the format used by them. That comprises the real estate and the personal property which, in turn, is broken down into schedules entitled "Securities" and "Savings and Investments." There are also motor vehicles, jewelry and household furnishings.
Turning first to the real estate in which the parties, either singly or jointly, have an interest, there are seven items to be considered:
1. 15 Pomps Lane, North Branford: The parties stipulated that this property has a value of $187,500.00 and that there is presently on it a first mortgage to a bank which mortgage has an unpaid balance of approximately $13,000.00 upon which mortgage the husband is solely responsible . When the house was purchased in 1977 for $53,500.00 the husband paid from his own funds the cash needed to be advanced as well as his executing a first mortgage to the Connecticut Savings Bank in the original amount of $23,500.00 on which the present balance is $13,000.00 according to the defendant's financial affidavit. Since 1977 to date he has paid the mortgage, taxes, insurance, utilities (except possibly the telephone for a time) and, in addition, he has spent between $8,000.00 and $10,000.00 in improvements there. This has a living room, dining room, two and a half bedrooms, kitchen and den as well as a glass in porch. This is the house that was acquired at the time the parties reconciled in 1977. At that time he gave her an engagement ring and CT Page 2414 agreed, as she asked, that they could reconcile on the condition that they not return to live in the Clear Lake house. He agreed and said a new house would be obtained and Pomps Lane was purchased in his name. About a month later they were married in that house. Thereafter, in 1980, the title was put in both their names as joint tenants.
It is ordered that the defendant husband's interest in the real estate known as #15 Pomps Lane be and hereby is assigned to the plaintiff wife to be hers; subject, however, to an equitable lien in favor of the defendant husband in the amount of Ten Thousand Dollars ($10,000.00) which lien shall be payable in full four years from the date hereof without interest. In the event that the plaintiff shall die, remarry, sell or transfer any interest in the Pomps Lane real estate, then said lien shall become payable at once. It is also ordered that the defendant who is now solely responsible on this mortgage to the Connecticut Savings Bank shall continue to make the present monthly payments on it including the real estate taxes.
2. 55 Clear Lake Road, North Branford: The parties stipulated that this house has a value of $186,700.00. There is no mortgage on it. This house was built by the husband before the marriage with his own funds on land he had purchased. This property is ordered to remain that of the defendant husband.
3. 220 Foxon Road, North Branford: The parties stipulated that this real estate has a value of $1,000,000.00. The husband owns an individual one-quarter interest in it and the value of his interest is $250,000.00. The husband acquired his interest In 1959 and it came to him through his family. He operates his automobile repair and gas station business on a portion of this property. His father, who owns an undivided one-half interest operates and maintains a trailer park on another portion; the defendant husband has no interest in the trailer park business. His sister owns an undivided one-quarter of the Foxon Road property and lives in a two-family house that is located there. The defendant's one-quarter interest in the Foxon Road property is ordered to remain that of the defendant husband.
4. Saboddy, Maine property:[11] Although not stipulated to, there appears to be no serious dispute that this property has a value of $100,000.00. The plaintiff wife has an undivided one-fifth interest in it with a value of $20,000.00 which came to her through inheritance from her father's estate in 1987. This property is ordered to remain that of the plaintiff wife.
5. Citrus Springs, Florida: Although not stipulated to, there appears to be no serious dispute that the two building lots in Citrus Springs have a value of $7,000.00. These were CT Page 2415 purchased in 1984 by funds of the husband and placed in joint names at that time. The plaintiff's interest in these lots is assigned to the defendant husband, and the plaintiff is ordered to execute any and all documents necessary to transfer her record interest to this Florida property. See Ivey v. Ivey,183 Conn. 400, 492-93, 439 A.2d 425 (1981).
6. Daytona Beach, Florida: This property is a "time share" condominium and there appears to be no serious dispute that it has a value of $9,000.00. It was purchased in 1986 by funds of the husband and placed in joint names at that time. The defendant's interest in this "time share" condominium is assigned to the plaintiff wife and the defendant is ordered to execute any and all documents necessary to transfer his record interest to this Florida property. See Ivey v. Ivey, supra.
7. Actworth, New Hampshire: This property is acreage and there appears to be no serious dispute that it has a value of $7,500.00. The defendant purchased this land together with a friend, Al Hawkins in 1972, and each has an undivided one-half interest. The defendant's interest in this property is ordered to remain that of the defendant husband.
The personal property is listed in the defendant's financial affidavit and in two exhibits admitted at the trial: (1) Schedule B[12] captioned "Savings and Investments" and Schedule C[13] captioned "Securities." The court notes here that in making its orders concerning the division of property and also alimony, it has considered the "Tax Calculations" in the plaintiff's post-trial although no tax consequence evidence was presented at the trial.
As to the personal property the following is ordered set over to the plaintiff wife to be her sole property:
 1. Fifty percent (50%) of the value of the investments designated "No. Units in Schedule B (which include state and municipal obligations which total $73,931.72) $36,965.86 2. Fifty percent (50%) of the value of the CBT savings account referred to in Schedule C (which totals $24,092.22) 12,046.11 3. The following "Securities" in Schedule C: Central Maine Power, Southern Co., Texas Utilities, Pan Am, Tie Comm. nd Edisto Resources, 20,076.75 4. One 1989 Mercury Sable automobile, 13,000.00 CT Page 2416 5. The jewelry (six rings listed on Exhibit A (insurance appraisal), 3,145.00 6. The "Depression Glass" collection, 3,000.00
The following personal property is to remain the sole property of the defendant husband and is so ordered:
 1. Travelers HR10 (retirement plan) referred to in Schedule C, $179,484.38 2. Fifty percent (50%) of the value of the investments, designated "No Units" in Schedule B (which include state and municipal obligations and total $79,931.72), 36,965.86 3. Fifty percent (50%) of the CBT savings account referred to in Schedule C (which totals $24,092.22) 12,046.11 4. The following "Securities" referred to in Schedule C: CBT-Bank of New England, Black Hills Corp., United Illuminating, Southern New England Telephone, TECO and United Illuminating (Pref.) 56,013.01 5. One 1987 Mercury Grand Marquis automobile and one 1978 Ford pickup 9,000.00
It is also ordered, for the record, that although the plaintiff wife makes no claim of any interest in the automobile repair and gasoline station business presently operated by the defendant husband, the sole ownership of that business has been and is to remain in his sole ownership free and clear of any claim of any nature to it, in whole or in part, by the plaintiff wife.
Except as expressly provided in this memorandum, each party shall be responsible for their individual liabilities as shown on their financial affidavits. No orders are entered concerning the disposition of the furniture and furnishings in #15 Pomps Lane, North Branford and the parties should divide these as they jointly determine, and in the event of disagreement, they should consult with the Family Relations Office; no such orders are entered because only in the plaintiff's post-trial brief is a proposed division set out. The parties should settle this matter themselves.
We next take up the matter of alimony. The statute, i.e., General Statutes 46b- 82 permitting an award of alimony is permissive and not mandatory . When awarded, the trial court is to determine the type, amount and duration that appears to be proper for the particular case. Carpenter v. Carpenter, 188 Conn. 736, CT Page 2417 742, 453 A.2d 1151 (1982); El Idrissi v. El Idrissi,173 Conn. 295, 299, 377 A.2d 330 (1977); Holley v. Holley,194 Conn. 25, 31-32, 478 A.2d 1000 (1984); Koper v. Koper,17 Conn. App. 480, 483, 553 A.2d 1162 (1989). The court must consider and weigh the criteria set out in 46b-82 which are nearly identical with those in 46b-81. Holley v. Holley, supra; DeVillis v. DeVillis, 15 Conn. App. 318, 321, 544 A.2d 639
(1988). Section 46b-82 in addition does permit the consideration of ". . . the award, if any, which the court may make pursuant to section 46b-81. . . ." As with a property division, in considering the matter of alimony, no single criterion is preferred over the others in the circumstances of a particular case. Carpenter v. Carpenter, supra, 740-741; DeVillis v. DeVillis, 15 Conn. App. 318, 322, 544 A.2d 639
(1988). This court has considered and weighed all the criteria in 46b-82. In setting the type, amount and duration of alimony the court does not do so in a financial vacuum, but endeavors to do so in relation to all other relevant factors, financial and otherwise, (including the distribution of realty and personalty made to her). The defendant husband is ordered to pay as alimony to the plaintiff wife the sum of $225.00 per week for a period of five (5) years from the date of judgment in this case. It is also ordered that the defendant husband maintain at his sole expense the medical and/or dental health insurance coverage he presently has for the period of five (5) years from the date of judgment in this case, or until the wife's remarriage, death or cohabitation as defined by statute whichever event may first occur.
As to counsel fees, an order may enter that the defendant husband pay $3,000.00 toward the plaintiff wife's counsel fees.
Accordingly, a judgment of legal separation is entered together with judgment in accordance with the foregoing orders concerning the distribution of property, alimony and counsel fees.
ARTHUR H. HEALEY, JUDGE.