### SMITH v. DOYLE (two cases).
### Nos. 6996, 6997.

United States Court of Appeals for the District of Columbia.

Decided May 23, 1938.

Henry I. Quinn, William T. Hannan, and Richard W. Galiher, all of Washington, D. C., for appellants.

Alvin L. Newmyer and David G. Bress, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

The plaintiff Doyle sued as administrator for the deaths of Charlotte B. Pogue and her husband, Robert E. Pogue, which resulted from a collision of two automobiles at the corner of 41st and Harrison Streets in Washington, D. C. Robert Pogue was driving the car in which Charlotte Pogue was riding. A separate action was brought on behalf of each against Damaris Smith, who drove the other car, and against her father, Lybrand P. Smith. All four actions were consolidated for trial. Those on behalf of Robert E. Pogue resulted in judgments for the defendants. Those on behalf of Charlotte Pogue resulted in a separate judgment for the plaintiff against each defendant, father and daughter, and each has appealed.

The Pogue car was going west on Harrison Street. Mr. Pogue was in a hurry and drove through a stop sign. The Smith car was going south on 41st Street. The driver, appellant Damaris Smith, and her sister were on their way to a party. Their father, appellant Lybrand Smith, was not with them. The sister was not present at the trial. Damaris Smith testified, but not concerning the collision. She had lost all memory of it, in consequence of a severe concussion.

Appellants urge that there was no evidence of negligence on the part of Damaris Smith, and that the court should therefore have directed verdicts for both defendants. They urge also that the court erroneously admitted evidence to their prejudice. The judgment against Lybrand P. Smith rests upon the "family-purpose" doctrine, and he contends that there was no evidence to support a finding that he maintained the car for family purposes.

Although they do not refer to the matter in their brief, appellants excepted to the admission of the testimony of the only available eyewitness that appellants' car was "moving fast." Such evidence is usually allowed. Cases are collected in I Wigmore, Evidence (2d ed., 1923) § 571; 4 Id. § 1977. Normal persons frequently form impressions of the sort with regard to passing cars, and these impressions have meaning and value. It would be arbitrary to exclude them, at least when, as here, speedometer readings and the like are not available. Appellants excepted, also, to the testimony of a witness who heard but did not see their car, that he could tell from the sound of a Ford V–8 whether the motor was going slow, ordinarily, or fast, and that theirs was traveling at a rather high rate of speed just before the accident. Appellants contend that inexpert testimony to speed, based on sound alone, is inadmissible, and cite cases which tend more or less in that direction. Laubach v. Colley, 283 Pa. 366, 129 A. 88; Johnson v. Wilson, Ind.App., 200 N.E. 729, reversed on other grounds, Ind.Sup., 5 N.E.2d 533; Challinor v. Axton, 246 Ky. 76, 54 S.W.2d 600 (all automobile cases); Campbell v. St. Louis & Suburban Ry. Co., 175 Mo. 161, 75 S.W. 86. To the opposite effect are Nesbit v. Crosby, 74 Conn. 554, 565, 51 A. 550 (horse); Bennett v. Central California Traction Co., 115 Cal.App. 1, 1 P.2d 47 (street car); Van Horn v. B., C. R. & N. Ry. Co., 59 Iowa 33, 12 N.W. 752, and Missouri Pac. Ry. v. Hildebrand, 52 Kan. 284, 34 P. 738 (train). In the Nesbit Case the court said: "It is no objection to the question that the judgment called for was one based upon the exercise of the sense of hearing and not of sight. The law makes no such distinction between the senses." 74 Conn. 565, 51 A. 554. In the Bennett case the court said that it "is common knowledge possessed by every intelligent person, that the sound made by rapidly moving vehicles differs very materially from that made by those moving slowly, and that this fact is brought home to every one who walks the streets of our cities and hears the sound of passing vehicles." 115 Cal.App. 9, 10, 1 P.2d 51.

But we need not rule upon this point for even if there was error in the admission of the speed testimony to which appellants objected, it was harmless. We are to decide the appeal "without regard to technical errors, defects, or exceptions

which do not affect the substantial rights of the parties." 40 Stat. 1181, c. 48; 28 U.S.C.A. § 391. "A system of necessary rules of Evidence can exist and be obeyed, without affixing indiscriminately to every contravention of them the monstrous penalty of a new trial." I Wigmore, Evidence (2d ed., 1923), § 21. Several witnesses who were not on the street but in an adjoining house, and heard but did not see appellant's car, testified without objection that their attention was attracted by its "roar," which one of them called "much louder" than the ordinary noises of cars; that they heard the collision almost instantly, or "just a split second" after they first heard the approach of the car, although it had to traverse at least forty feet; and that the noise of the collision was very loud—one witness said, "like dropping a ton of plate glass off the Washington Monument." There was also testimony, based on sound, that the brakes were applied to appellants' car some forty feet north of the intersection. In view of all this evidence of speed, which was admitted without objection, the merely cumulative items to which appellants objected are unimportant and their admission, even if erroneous, was not so prejudicial as to require reversal. Harris v. United States, 50 App.D.C. 139, 269 F. 481; Belisle v. Lisk, 1 Cir., 16 F.2d 261; Reid v. Baker, 9 Cir., 288 F. 969.

We think the testimony we have summarized disposes also of the contention that the trial court should have directed a verdict in favor of appellant Damaris Smith. We think it supports, though it does not require, the conclusion that she drove at an illegal and negligent speed, and that this was a cause of the collision. Cf. Goodyear Service, Inc., v. Pretzfelder, 65 App.D.C. 389, 393, 84 F.2d 242. The inference is further supported by the testimony that practically the whole right side of the Pogue car was caved in. As the negligence of Mr. Pogue cannot be imputed to Mrs. Pogue,[1] it follows that her administrator may recover against Miss Smith.

The court instructed the jury that "As to the cases in which her father is defendant, * * * the essential elements are, first that the father maintained the car for family purposes, for the convenience of the members of his family, and that the car on this occasion was being used in the furtherance of the purpose. * * *"

We think this a fair statement of the "family-purpose" or "family-car" doctrine, which "holds the owner of an automobile which was purchased and maintained for the pleasure of his or her family, liable for injuries inflicted by the machine while it was being used by members of the family for their own pleasure." 64 A.L.R. 844. The doctrine has been adopted in many, though by no means all, American jurisdictions. 88 A.L.R. 601; 100 A.L.R. 1021. This court in Hardy v. Smith, 63 App.D.C. 44, 68 F.2d 992, imposed responsibility for an accident upon a father who owned a car and had turned it over to his son for the son's use in going to school and otherwise. The son was driving it to school when he struck the plaintiff. Cf. Turoff v. Burch, 60 App.D.C. 221, 50 F.2d 986; Moody v. Stephens, 55 Wash.L.R. 100.

Appellant Lybrand Smith, in his plea, admitted that he owned the car but denied that he provided it for family purposes. Damaris Smith testified that the car was bought in her father's name, but that she and her sister gave him the money, out of their savings, to buy it for them; that they bought it for their own use to go to American University, about two miles from their home, and used it for that purpose, though of course it was understood the family could use it if they wanted to; that her mother drove the car occasionally to shop; that her father "very seldom" drove the car, because he "had a car of his own;" that the other car was a roadster, and the family used the Ford involved in the collision only if they went together; that her father used the other car for business only, and this Ford more for the family use; that it was used for family purposes. At the time of the accident witness was driving the car to go with her sister to a party. According to this testimony, the father was merely the purchaser and legal owner of a car which the daughters caused to be bought with their own money for their own purposes. There was no contrary testimony. There was no evidence that the father put a dollar into the purchase of the car, or took any part in the decision to buy it, or decided who should drive it or to what uses it should be put. There was no evidence that he ever "maintained" it in any sense, to any extent, for any purpose.

It follows, in our opinion, that there was no evidence to support the judgment against him. We know of no case in

---

[1] Old Dominion Stages, Inc., v. Connor, 67 App.D.C. 158, 90 F.2d 403.

which, without a statute, a merely formal owner of a car has been held liable in circumstances like these. In Hanson v. Eilers, 164 Wash. 185, 2 P.2d 719, in which the father was held liable, it was found that he bought the car for the special use of the son whose negligence caused the accident. In the absence of anything to limit that finding, it means that he bought the car with his own money and decided what should be done with it. That case is much like Hardy v. Smith, supra. In Cewe v. Schuminski, 182 Minn. 126, 127, 233 N.W. 805, a husband bought and made the down payment on the car which he was driving at the time of a collision. Title was taken in the wife's name; the car was registered in her name, and she signed a chattel mortgage to secure the unpaid balance of the price. The court held that the wife was not liable under the family-purpose doctrine, since the transaction was not hers in substance, and her husband "procured, furnished, and maintained the car for whatever use anybody made of it. * * * Her passive holding of title was not enough to charge her with liability for her husband's lethal negligence." (page 806) In Wyant v. Phillips, 116 W.Va. 207, 179 S.E. 303, a wife, who owned the car, was held liable for her husband's negligent driving, notwithstanding the fact that he paid for its upkeep and operation; but her ownership was no mere form, for the car, instead of being paid for by the husband, had been given to the wife by her father. The family-car doctrine rests upon the ideas that the owner of the car puts it into circulation, and that he is more likely than the driver to be financially responsible. Both ideas lose most of their force when, as in the present case, the driver provides the money with which the nominal owner makes the purchase.

The collision occurred on October 5, 1934, before the Automobile Financial Responsibility Law, which we applied in Forrester v. Jerman, 67 App.D.C. 167, 90 F. 2d 412, went into effect. Act of May 3, 1935, 49 Stat. 167, c. 89, § 3; Act of August 24, 1937, 50 Stat. 751, c. 753; D.C. Code, Supp.1937, tit. 6, § 255b. By its express terms, therefore, that act is inapplicable.

The judgment against Damaris Smith is affirmed. The judgment against Lybrand P. Smith is reversed.

No. 6997 affirmed.

No. 6996 reversed.