**GULF OIL CORPORATION, Appellant,**

v.

**Ernest E. REED, As Administrator of the Estate of Dwight K. Reed, Deceased, Appellee.**

**Nos. 17889, 18259.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 20, 1964.

Decided May 28, 1964.

---

961

Mr. John P. Arness, Washington, D. C., with whom Mr. George U. Carneal, Jr., Washington, D. C., was on the brief, for appellant, Gulf Oil Corporation.

Mr. Franklyn Yasmer, Washington, D. C., with whom Mr. Stanley A. First, Washington, D. C., was on the brief, for appellee.

Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and WILBUR K. MILLER, Circuit Judge.

BAZELON, Chief Judge:

Dwight K. Reed, age 7½, was killed when struck by a pick-up truck belonging to the Gulf Oil Corporation. His father, as administrator, sued Gulf under the wrongful death act, D.C.CODE § 16–1201, alleging that the accident was caused by the negligence of Gulf's driver. Gulf denied that death "resulted from any negligence or carelessness on their part which proximately contributed thereto," and alleged that decedent was contributorily negligent. Upon trial, the jury returned a verdict for plaintiff. Defendant's alternative motions for judgment notwithstanding the verdict, new trial, or reduc-

tion of verdict were denied, and judgment was entered on the verdict.

■ Appellant's chief contention is that there was no evidentiary basis for the trial court's instructions on proximate cause. We agree.[1]

It is undisputed [2] that Gulf's truck was proceeding north on New Jersey Avenue, S. E., which at that point consists of a bridge or viaduct over railroad tracks. The roadway is bounded on each side by a concrete wall five feet in height. A similar wall 178 feet in length runs along the center of the street, separating the northbound lane from the southbound lane. Plaintiff's decedent crossed in front of the truck from behind the center wall. The left side of the front of the truck, just above the headlight, made contact with the boy. The driver applied the brakes at the time of impact and skidded a distance of 88 feet.

The police officer who investigated the accident testified for plaintiff that on the basis of the skid marks and a test skid performed with the truck, he estimated the truck's speed at 35 miles per hour. The applicable speed limit was 25 miles per hour.

At the close of plaintiff's case,[3] the defendant moved for a directed verdict. The court denied the motion on the ground that driving at a speed of 35 in a 25 mile-an-hour zone was enough evidence of negligence to raise a jury question.[4]

Defendant's evidence included the following: a playmate of the decedent testified that they were playing near the bridge, then climbed onto it, and hid on the west or southbound side of the center wall, out of sight of northbound motorists. Just before the accident, the decedent said, "Watch me beat this car." Thereupon he ran out from behind the wall into the northbound lane where he was struck. The driver of a Post Office truck testified that he was approaching the bridge from the north, i. e., traveling in the opposite direction from the Gulf truck. He noticed a boy running across the avenue from the west side toward the center. When the boy reached the center, he ran out onto the eastern half (northbound lane) and "the truck hit him instantaneously."

Defendant's truck driver testified that he was traveling "about 25, 30 miles an hour, sir; normal speed." He saw no other vehicles proceeding in the same direction and saw no children in the roadway. He stated:

"Just as I approached the end of the bridge I saw a boy run out from the wall there, right in front of my truck, sir. * * * I hit the brake, sir, as soon as I could and tried to stop fast as I could, sir. I was all nervous. [Q * * * [H]ow far in front of you, approximately, was the little boy when he ran out in front of you? A] I'd say two to three feet, sir. * * * It was a wall about five foot high with a sign on it. He run right smack out from there, right in front of the truck. [Q Now, was the accident a complete surprise to you, sir? A] Yes, sir it was sir."

1. We do not agree with appellant's further claim that the court erred in not finding contributory negligence as a matter of law. See Barstow v. Capital Traction Co., 29 App.D.C. 362, 372–79 (1907); United States v. Benson, 88 U.S.App.D.C. 45, 185 F.2d 995 (1950).

2. The facts in this paragraph are derived from the parties' stipulation and the uncontroverted portions of the testimony of plaintiff's chief witness, the investigating police officer.

3. The only other evidence for plaintiff was his own testimony about the decedent (including the fact that he was four feet four inches tall), a funeral bill, and two traffic regulations.

4. Before the plaintiff completed his evidence, the judge, outside the presence of the jury, indicated that in his view the violation itself also raised a jury question on proximate cause.

After both sides had rested, the defendant moved for a directed verdict on the ground that no actionable negligence had been established, that contributory negligence had been established as a matter of law, and that there was no basis, other than conjecture or speculation, for a jury finding of proximate cause. The court denied the motion, stating:

"It seems to me excessive speed is always a proximate cause because, suppose this truck was going slowly and suppose the child darted across the path of the truck so that the accident could not have been avoided, but the child might not have been killed because the impact might not have come with as strong a force." [5]

The case was submitted to the jury under the following instruction on negligence and proximate cause:

"If the truck was considerably in excess of the speed limit, that in itself may be considered by you, ladies and gentlemen of the jury, as evidence of negligence under our law and you may find on that basis that the truck driver was guilty of negligence; and if you so find, then, of course, you have to take another step. Was the excessive speed one of the causes of the accident? Of course, if the truck had been going at a slow rate of speed, perhaps the boy might have been able to run to safety, or perhaps if the boy had been struck the impact would not have been as severe and might not have caused the boy's death. All of these matters are for you to consider, not for me. I am just calling them to your attention. What weight you should give to them, if any, is for you to determine."

■■ The court's instruction on the law was correct: violation of a regulation governing the use of automobiles may be evidence of negligence; but the violation—and not the permitted activity itself—must be the proximate cause of the plaintiff's injury.[6] This limitation is especially relevant in the case of a speed regulation, since certain risks inhere in the operation of an automobile at any speed. Thus when the only negligence charged is that of proceeding at an unreasonable speed, and the unreasonableness is inferred from a violation of the speed limit, there must be some evidence that the accident might not have occurred within the speed limit.[7]

■ In this case plaintiff did not offer expert testimony to show that at a speed of 25 miles per hour the accident would have been avoidable. His expert's testimony indicated only that at 25 miles per hour, the truck would have skidded a distance of 46 feet 8 inches before stopping. Since the uncontradicted testimony of three witnesses (two disinterested) established that the accident occurred the moment the decedent stepped on the roadway, common knowledge does not suggest how a speed of 25 would have altered the result, especially when the boy was struck by the part of the truck closest to the center wall, indicating that he was not at all close to being able to "beat this car." Thus there was no support in the record for the trial court's speculation that at a "slow rate of speed" (presumably the speed limit), the child would have been able to flee the truck's path or at least to escape death.

---

5. "[Counsel for Defendant:] Your Honor, there is no evidence on that and to indulge in that, I think, would be speculation.
"The Court: No, you do not have to have evidence to show—that is a matter of common knowledge; in fact, it is an ordinary matter of physics that a vehicle going very fast will strike an object with much greater force than a vehicle going very slowly."

6. See Richardson v. Gregory, 108 U.S.App. D.C. 263, 266–67, 281 F.2d 626, 629–30 (1960); Warren v. Haines, 126 F.2d 160, 162 (3d Cir.), cert. denied, 316 U.S. 688, 62 S.Ct. 1279, 86 L.Ed. 1760 (1942).

7. See Underwood v. Fultz, 331 P.2d 375, 378–79 (Okl.1958); Davis v. Brooks Transp. Co., 186 F.Supp. 366, 368 (D.C. Del. 1960).

It appears, however, that since the trial court ruled, both during plaintiff's case-in-chief and at the close of all the evidence, that there was sufficient evidence already in the record to raise a jury question as to proximate cause, the plaintiff was not aware of the necessity for further evidence on the issue of proximate cause. In these circumstances, a "just" disposition (28 U.S.C. § 2106) suggests the advisability of affording him the opportunity to present such evidence if he is able. Accordingly we set aside the judgment below and remand the case to the District Court with directions to grant a new trial, if it determines that plaintiff is able to present relevant evidence on proximate cause; if he is not, then to enter judgment for the defendant.

So ordered.

WILBUR K. MILLER, Circuit Judge (concurring in part and dissenting in part):

In the main, I agree with the majority opinion. But I dissent from the last paragraph in which my colleagues conclude —erroneously, I think—to remand for the purpose of giving the plaintiff an opportunity to present additional evidence on proximate cause. They think the trial court's ruling that there was sufficient evidence to form a jury question as to proximate cause, now held to have been incorrect, may have led the plaintiff to refrain from offering further evidence on that issue.

This seems to me to be an inadequate reason for ordering a remand. Regardless of the trial court's ruling that there was sufficient evidence already in the record to raise a jury question as to proximate cause, I think it was incumbent on the plaintiff to make that evidence stronger if he could, and to introduce all the proof of proximate cause which was available. Presumably he did so, and, therefore, I am not in favor of giving him another bite at the cherry. I think we should not remand but reverse outright.