### The WASHINGTON GAS LIGHT COMPANY, Appellant,

v.

### Lillie Mae JONES, Appellee.

### The DISTRICT OF COLUMBIA, Appellant,

v.

### Lillie Mae JONES, Appellee.

### Nos. 7745, 7746.

District of Columbia Court of Appeals.

Argued June 11, 1974.

Decided Feb. 5, 1975.

Rehearing En Banc Denied
March 5, 1975.

---

Kevin J. Baldwin, Washington, D. C., for appellant in No. 7745.

Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellant in No. 7746.

John C. La Prade, Washington, D. C., for appellee.

Before FICKLING, KERN and HARRIS, Associate Judges.

FICKLING, Associate Judge:

This is a consolidated appeal from a jury verdict in favor of appellee Lillie Mae Jones, who had brought suit against the Washington Gas Light Company and the District of Columbia for damages suffered when she tripped over a protruding gas box in a public street. The issues raised on appeal are: (1) whether the testimony of a witness as to the estimated height of the protrusion is probative in light of conflicting testimony based on precise measurement of the protrusion; (2) whether the protrusion is trivial as a matter of law and therefore not an actionable defect; and (3) whether the evidence is sufficient on the question of notice. We affirm.

On December 31, 1969, at approximately 8:30 p. m., Miss Jones, aged 71, alighted from a bus near the intersection of M Street and Connecticut Avenue, N.W.

After dismounting the bus and while crossing M Street in the crosswalk, Miss Jones stubbed her right foot on a 6″ x 6″ gas box which protruded from the surface of the street and she fell to the pavement injuring her knee.

There was conflicting testimony concerning the elevation of the gas box. Mr. Reams, a witness for the plaintiff, who photographed the scene of the accident and the gas box in particular, testified that he estimated the gas box to be ½″ to ¾″ above the surface of the pavement. Mr. Sullivan, a gas company employee, testified that, using a metal tape measure, he measured the gas box and found it to be ¼″ to ⅜″ above the surface.

With respect to the conflicting testimony, we find that Mr. Reams' testimony is admissible. It has long been recognized that testimony relating to estimates of distance, time, size, identity, and the like are admissible. 7 Wigmore on Evidence § 1977 (3d ed. 1940). If, as here, the admitted testimony leads to a conflict in the evidence presented as to the height of the protrusion, then the jury, as the trier of fact, is bound to resolve the conflict and determine the actual height of the gas box. Once opinion testimony is admissible, as is Mr. Reams' testimony, it does not subsequently become non-probative nor insufficient to support a verdict merely because of conflicting evidence.

On the question of whether the protrusion is trivial as a matter of law, appellants' reliance on Proctor v. District of Columbia, D.C.App., 273 A.2d 656 (1971), is misplaced. There, this court held that a ¼″ brick protrusion in a brick sidewalk was such a trivial irregularity that the trial court should have directed a verdict in favor of the District of Columbia. Unlike the instant case, in *Proctor* there was an inconsequential unevenness which is common to most brick sidewalks; here, there was a foreign object (*i. e.*, gas box) protruding in a crosswalk according to evidence presented by appellee.*

More relevant is Klein v. District of Columbia, 133 U.S.App.D.C. 129, 409 F.2d 164 (1969), in which the court held that a sidewalk elevator shaft door handle which protruded ¾″ was of a sufficient height to allow the jury to determine whether the District of Columbia was negligent in allowing this condition to exist. The court found "it impossible to say that reasonable men must necessarily find that such a protrusion . . . on a sidewalk is *not* unreasonably dangerous. . . ." 133 U.S.App.D.C. at 132–33, 409 F.2d at 167–68 (emphasis in original). Since here there is evidence that the gas box was ½″ to ¾″ above the surface of the crosswalk, the protrusion was not trivial as a matter of law and it was not error to submit the case to the jury.

Finally, we find no error in submitting the question of constructive notice to the jury based on the photographic evidence in this case. District of Columbia v. Megginson, D.C.App., 250 A.2d 571 (1969).

Affirmed.

HARRIS, Associate Judge, dissenting:

The plaintiff-appellee had crossed the street involved here on a regular basis for more than 30 years, without prior incident. On the evening in question, the intersection with which she was so familiar was

---

\* As stated in Proctor at 658:

> We do not believe that we should get into the position of arbitrarily determining that the maintenance of a particular defect such as a hole of a certain depth or a raised brick protruding a certain height above the surrounding bricks constitutes negligence.

> Such questions are for the jury in light of all of the surrounding circumstances. But this does not mean that we should not examine the evidence to determine if the verdict is supported by substantial evidence.

Here, we find the jury verdict was supported by substantial evidence.

well lighted, but she regrettably did trip and fall. She suffered modest injuries to a knee and an elbow, for which the jury awarded her $5,000.

The record is uniquely imprecise as to the cause of her fall, there even having been testimony to the effect that her first lawyer (not her present counsel) suggested to her some days later that the gas box was the object she had tripped over.[1] Nonetheless, interpreting the evidence in the light most favorable to Miss Jones, I could not say that the jury would have had to speculate to conclude that the gas box in the crosswalk prompted her to fall.

A witness for the plaintiff photographed the crosswalk. The photographs which were received in evidence reflect several other road surface conditions in that immediate area which are at least as irregular as the gas box. The witness did not measure the extent of the box's protrusion above the street. Rather, he merely estimated it at from ½ to ¾ of an inch. A gas company witness made actual measurements. His results were ¼ of an inch on the edge towards which Miss Jones was walking, with the highest dimension (on the south side, away from her) being ⅜ of an inch. While the photographer's rough estimate should have carried virtually no weight with the jury, I agree with the majority that his testimony was admissible. That leaves both the gas company and the District of Columbia saddled with a theoretical gas box height of ½ to ¾ of an inch.

The District of Columbia "is not an insurer of the safety of travelers upon its streets and is only required to maintain sidewalks and roadways in a reasonably safe condition." District of Columbia v. Williams, D.C.Mun.App., 46 A.2d 111, 112,

(1946). To be sure I sympathize with Miss Jones concerning her accident. Nonetheless, a judgment such as the one entered in this case ultimately must be satisfied by the city's taxpayers and by the utility's ratepayers. Where there is actionable negligence, that is only just. Yet even assuming causation, compensation does not automatically follow. In this case, I must part company with my Brothers, for I believe the trial court should have set aside the verdict and entered judgment for the defendants.

The majority discounts this court's opinion in Proctor v. District of Columbia, D.C.App., 273 A.2d 656 (1971), and relies dispositively (as did the trial court) on the circuit court's opinion in Klein v. District of Columbia, 133 U.S.App.D.C. 129, 409 F.2d 164 (1969). My reading of those decisions—both of which involved falls on sidewalks, where surface irregularities may be expected to be notably less than on streets—leads me to the opposite conclusion.

The *Klein* case was decided by a divided court. The plaintiff tripped over a handle on a sidewalk elevator shaft door. Testimony as to the extent of its protrusion above the sidewalk ranged from ¼ to ¾ of an inch. The trial court directed a verdict for the defendants. The circuit court reversed, but that result was predicated in major part upon a District of Columbia Building Code provision which "requires sidewalk vault coverings to be flush with the sidewalk".[2] Klein v. District of Columbia, *supra* at 131, 409 F.2d at 166.

There is superficial charm in the majority's approach, which basically is "let the jury decide." However, the streets in this jurisdiction are subjected to heavy vehicular use as well as to difficult climatic con-

---

1. The "gas box" involved here was a six-inch square cast iron box, imbedded in the street and used in years past to permit liquids to be removed from the gas line which passed through it.

2. The elevator in the *Klein* case was installed prior to the adoption of the Building Code provision requiring a flush fitting. Nonetheless, the circuit court concluded that the provision could be called to the jury's attention as evidence of a reasonable standard of care.

ditions, and the concept of smooth streets is an unachievable nirvana. There must be literally millions of surface irregularities on the streets of the District of Columbia which are at least as hazardous as that which was associated with Miss Jones' fall. While the *Klein* majority set aside the directed verdict for the defendants in that case, it nonetheless recognized (*id.* at 132, 409 F.2d at 167):

> This does not imply that all cases must go to the jury, of course. The trial judge, while avoiding broad rules of thumb, must examine the specific evidence in each case and determine whether the jury could reasonably find negligence.

The key must remain "negligence". Without it, there cannot be liability. My Brothers' readiness to extend the "flush sidewalk" concept of *Klein* to street irregularities is achieved in a rather routine manner which belies the effect of the court's holding. The law in this jurisdiction as to surface irregularities—absent the Building Code provision relating to sidewalk elevators which apparently was controlling in *Klein*—has been as expressed in this court's opinion in Proctor v. District of Columbia, *supra*.[3] We there reaffirmed our unwillingness to adopt an absolute rule as to what degree of surface irregularity may be permitted to go to a jury, but stressed (273 A.2d at 659):

> Cases can arise involving such slight variations in depth or height that it could and should be said that reasonable men would not differ regarding the condition of the surface.

The majority here not only effectively rejects *Proctor,* but moves the *Klein* concept of a flush surface from the sidewalk to the street. In my view, we should not do so. The majority rather casually discards *Proctor* by making the following statement: "Unlike the instant case, in *Proctor* there was an inconsequential unevenness which is common to most brick sidewalks." I believe that we can and should take judicial notice of the fact that this city's streets (like those of other major urban areas) are replete with instances of inconsequential unevenness, of which this case involves one. I do not think the facts of record provide any basis for finding negligence on the part of the defendants.

It is my hope that the future import of this case will be limited to its particular facts—*i. e.,* a gas box in a crosswalk. While I believe that the majority intends such a limited holding, I fear that this case ultimately will be extended beyond such bounds. The scenario is regrettably predictable: Have a fall on a District of Columbia street, eschew making actual measurements and have a witness estimate the extent of the irregularity which is identified as having caused the fall (making certain the estimate reaches ½ to ¾ of an inch), and hope that a jury will compensate a plaintiff for the city's inability to achieve and maintain near perfection on the road surfaces which so many pedestrians and motor vehicles must share. Since this would create a burden which neither the city nor the courts should bear, I respectfully dissent.

3. The opinion in the *Proctor* case includes references to a number of cases from other jurisdictions which are consistent with these dissenting views.