**D. C. TRANSIT SYSTEM, INC.,**
Appellant,

v.

**Bessie L. PERRY, Appellee.**

No. 7588.

District of Columbia Court of Appeals.

Argued Dec. 4, 1973.

Decided April 29, 1975.

———◆———

John C. Swanson, Washington, D. C., for appellant.

Harold A. Sakayan, Rockville, Md., for appellee.

Before REILLY, Chief Judge, and FICKLING and HARRIS, Associate Judges.

REILLY, Chief Judge:

In an action by a bus passenger against the D.C. Transit System, Inc. for personal injuries asserted to have been caused by the negligence of the driver operating the bus, a jury returned a verdict for $8,000 in damages. On appeal the transit company contends that the trial court erred in denying a motion for a directed verdict after plaintiff rested.

At the trial, plaintiff, a 73-year-old woman, testified that she boarded a southbound bus at the corner of 16th and Shepherd Streets. After paying her fare and noticing that the front seats were occupied, she took two or three steps toward the rear of the vehicle when it "jerked" forward unusually fast, causing her to fall backward to the floor of the bus near the fare box. Other passengers as well, she said, were rocking in their seats.

According to her testimony, the driver stopped the bus almost immediately after she fell, and he and another passenger assisted her to a seat. She remained on the bus until she reached her destination (the intersection of Columbia Road and 16th Street) and left without trying to ascertain the name of the driver or of any passenger. She did, however, jot down the number of the bus on a piece of paper, which she gave to her family physician upon whom she called the following day.

The physician testified that his examination on this occasion disclosed that she had suffered a bruised shoulder, hand, knee and back strain, as a result of the fall.[1] Nor corroborating witnesses to the accident itself were produced.

---

1. On cross-examination, the physician admitted that he had been treating the plaintiff prior to the accident for hypertension and soreness in the hand, shoulder, and other joints, which he attributed to an arthritic condition. Office treatments for the pains attributable to the fall were made at intervals over a two-month period. He billed the patient $200 for these visits.

In its defense, appellant called the driver whom the records showed operated the bus on the particular morning. He testified that he pulled the bus away from the intersection in an ordinary manner and that nothing unusual happened. Furthermore, he denied that any passenger fell on his bus on the day in question, explaining that if there had been such an occurrence he would have reported it under company regulations. Motions for directed verdicts at the conclusion of both plaintiff's and defendant's cases were made and denied.

A careful examination of the record compels us to hold that the trial court should have directed a verdict for appellant on the authority of Wiggins v. Capital Transit Company, D.C.Mun.App., 122 A.2d 117 (1956). There, this court sustained a directed verdict against a 71-year-old woman passenger who testified that after she boarded a bus she "went to step over the white line and before she could grasp the hand rail, the bus 'started suddenly' and threw her to the floor. . . ." causing multiple injuries. Another passenger called by the plaintiff also testified that the bus started off with a "little jerk."

In its opinion, this court held that a carrier was not liable for jerks or jars which were no more than the necessary or usual incidents of the operation of the conveyance. " . . . Passengers are said to assume such risks as an incident of their travel and for that reason recovery is usually denied unless it is shown that the 'jerk' or 'sudden start' was of such unusual and extraordinary force that it could not reasonably be said to have happened in the ordinary operation of the vehicle." *Id.* at 118. (Footnote omitted.)

The court also pointed out that proof of negligence in the operation of a passenger carrier must be based upon testimony con-sisting of something more than mere descriptive adjectives and conclusions. The opinion observed that while in some circumstances testimony regarding the nature and extent of the injuries might have some probative value, the decisions in which such evidence was accorded weight on the issue of negligence depended on evidence in addition to the nature of the injuries.[2]

So far as establishing that negligence in the operation of the bus caused the injuries, the evidence presented by plaintiff here actually fell short of that adduced in *Wiggins.* Her testimony respecting details of the "jerk forward . . . unusually fast" was that the bus "lunged forward" from the stationary position it was in when she paid her fare.[3] The witness was definite in stating that the driver did not apply the brakes until after she had fallen. Under these circumstances, it is difficult to understand how a passenger proceeding to the rear of the bus would have fallen backward rather than forward, as there was admittedly no sudden stop.

Had there been testimony from other eyewitnesses to support plaintiff's account of the accident [4]—as in Capital Transit Company v. Beasley, D.C.Mun.App., 148 A.2d 577 (1959), where the plaintiff's testimony about the sway of a streetcar was illuminated by another passenger who recalled that when the car started it began to sway, rock and jerk, causing her to steady herself as the car went faster than usual —we might have a different situation. Absent meaningful evidence of " . . . how much the movement of the bus deviated from a normal operation" (Wiggins v. Capital Transit Company, *supra* at 119 n. 7) and that such movement was the proximate cause of plaintiff's fall, the judgment of the trial court cannot stand.

Reversed.

---

2. Oklahoma Ry. Co. v. Jones, 207 Okl. 476, 250 P.2d 472 (1952) (evidence of slamming of brakes) ; Johnson v. Berkshire St. Ry. Co., 292 Mass. 311, 198 N.E. 154 (1935) (evidence of sudden start effects on other passengers).

3. She speculated that the driver probably pressed the gas pedal (accelerator) down all the way to the floor.

4. In *Wiggins*, although another passenger testified, it is significant that she merely described the take-off of the bus as "a little jerk."