WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al., Appellants,

v.

**Brenda E. JONES, et al., Appellees.**

**No. 79–293.**

District of Columbia Court of Appeals.

Argued En Banc Nov. 23, 1981.

Decided March 24, 1982.

Stephen A. Trimble, with whom Richard W. Turner, Washington, D.C., was on the opposition to the petition for rehearing en banc, for appellants.

Samuel Intrater, with whom Albert Brick, Washington, D.C., was on the petition for rehearing en banc, for appellee Brenda E. Jones.

Frank J. Martell, Washington, D.C., was on the petition for rehearing en banc, for appellees Brenda E. Jones and Clyde Jones.

Before NEWMAN, Chief Judge, and KELLY, KERN, NEBEKER, HARRIS,* MACK, FERREN, PRYOR and BELSON, Associate Judges.

KELLY, Associate Judge:

This appeal constitutes the residuum of litigation arising from an intersection collision between a passenger car and a Metrobus on May 9, 1976. Seven separate lawsuits were filed by the parties to the accident.[1] The cases were consolidated for a bifurcated trial before a jury which began on April 24, 1978. On April 28, 1978, the jury returned a verdict against WMATA and the bus driver, Alvin Porch (hereinafter jointly referred to as "Metro/Porch"), on the issue of liability; and on May 5, 1978,

the jury awarded damages in excess of $475,000. Metro/Porch moved for judgment notwithstanding the verdict, or, in the alternative, a new trial. The trial court denied the motions; judgment was entered in favor of the appellees; and this appeal was noted. A division of this court reversed as to all appellees, including, without explanation, the passengers in the Jones' vehicle, holding the doctrine of last clear chance inapplicable to the facts of the case.[2] Petitions for rehearing en banc were granted. We affirm.

I

There is no dispute that on May 9, 1976, at approximately 11:00 p. m., at the intersection of 12th & O Streets, N.W., a Chevrolet Monte Carlo, owned by Clyde Jones and driven by appellee Brenda Jones, collided with a Metrobus driven by Alvin Porch.

Jones' vehicle had approached the intersection traveling in an eastbound direction on O Street. O Street is a two-way street controlled by a stop sign at 12th. The bus was proceeding northbound on 12th, which is one-way in a northerly direction, and is divided into three lanes. There is no stop sign or traffic signal controlling 12th Street traffic at the O Street intersection. The weather was clear on the night of the accident. These two streets are straight and level as they lead into the intersection and both are lit by sodium vapor (bright white) street lamps. Each vehicle had its headlights turned on, and the bus was also illuminated by interior lights, destination sign and marker lights.

Brenda Jones and two of the passengers in the car all testified that she came to a complete stop at the sign at 12th & O Streets. Two witnesses and the bus driver

---

* Associate Judge HARRIS was a member of the en banc court at the time of argument. He retired from this court effective February 5, 1982.

1. Both drivers and their principals sued each other and all were sued by passengers in the auto. In addition, the drivers and their principals filed cross-claims against each other for contribution and indemnity. Five of the lawsuits filed were settled or dismissed by the court before the jury awarded damages. The other remaining case, *Waltower, et al. v. WMATA* (C.A. No. 6784–76) was settled while on appeal (No. 79–337).

2. *Washington Metropolitan Area Transit Authority v. Jones*, No. 79–293 (July 29, 1981), *vacated*, September 22, 1981.

testified that the Jones' vehicle did not stop. Margie Adams, who viewed the collision from outside her 12th Street home, approximately one-half block above the intersection, testified that the Jones' vehicle did stop at the stop sign, at a time when the bus was about a block away, at N Street, but then proceeded into the intersection where it appeared to again stop or stall.

Porch testified that as he approached the intersection traveling at a speed between 18 and 22 MPH, he moved from the center to the right lane. A witness who had been standing beside his parked car on the west side of 12th Street, between O & P Streets, stated at trial that the bus was traveling between 20 and 25 MPH. A passenger on the bus, whose deposition was read at trial, approximated the speed of the bus as between 25 and 30 MPH. He also noted that the bus increased its speed between N and O Streets.

Margie Adams was asked at trial to estimate the speed of the bus. She gave the following descriptions:

"... it was really rolling."

   \*    \*    \*    \*    \*    \*

"... it looked like it was fast, fast, faster [than] it should have on 12th Street."

Porch testified that he first saw Jones when both the auto and the bus were approximately 40 feet from the intersection, traveling at the same rate of speed. According to Porch, he then checked the view to his left and right to see that there were no children playing near the street. When Porch next saw the Jones' vehicle, he was about 15 feet from the intersection and at that time he realized Jones would not be able to stop. Porch then took "evasive action." He "smash[ed] on the brakes" and swerved to the right. Porch testified that, following the collision, his brakes would not operate, so he proceeded towards a vacant lot on the right side of the road where the bus collided with a tree. Porch claimed that immediately before the accident his brakes were "working perfectly." He also stated that the accident occurred on the right-hand side of the intersection.

Jones also testified that her car had reached the far side of the intersection at the time of the collision. According to her version, she had looked in both directions before proceeding across the intersection, and although she and a passenger each testified that their view to the south was good, neither became aware of the bus until just before impact.

Eric Mines, the investigating police officer, gave testimony describing scuff marks found at the scene and damage to the two vehicles. He also stated that the speed limit on the two streets was 25 MPH.

The jury returned a verdict on liability based on the following answers to written interrogatories: Brenda Jones was negligent in the operation of her car but her negligence was not a proximate cause of the accident; Metro/Porch was negligent in the operation of the bus and that negligence was the proximate cause of the accident; the negligence of *both* Brenda Jones and Metro/Porch was not the proximate cause of the accident; finally, the jury found that Metro/Porch had the last clear chance to avoid the accident and that Brenda Jones did not.[3]

## II

Appellants contend that they were entitled to a directed verdict or judgment notwithstanding the verdict because there was no evidence from which the jury could find Porch was negligent in operating the bus, and, even assuming some negligence on his part, it was not shown to be the proximate cause of the accident.

The trial court may properly grant motions for a directed verdict or judgment N.O.V. only when, viewing the evidence in the light most favorable to the party who secured the jury verdict, no juror could reasonably reach a verdict for that party. *Webster v. M. Loeb Corp.*, D.C.App., 400 A.2d 319, 320 (1979). We have often stated that in intersection collisions the issues of negligence and proximate cause will almost

---

**3.** The jury also found that Mabel Bland, a passenger in Jones' car, was not negligent.

always be questions of fact to be decided by the jury. *Aqui v. Isaac*, D.C.App., 342 A.2d 370 (1975); *Spain v. McNeal*, D.C.App., 337 A.2d 507 (1975); *Shu v. Basinger*, D.C.Mun. App., 57 A.2d 295 (1948). The jury must be allowed to weigh the credibility of the witnesses and resolve disputes as to speed and distances. *Id.* at 295–96.

It is only in a case where the facts are undisputed and, considering every legitimate inference, only one conclusion may be drawn, that the trial court may rule as a matter of law on negligence, contributory negligence or proximate cause. *D.C. Transit System, Inc. v. Harris*, D.C.App., 284 A.2d 277 (1971); *Carter v. Singleton*, D.C. App., 219 A.2d 114, 115 (1966).

In the instant case, there was conflicting testimony on basic factual issues; and several inferences could reasonably be drawn from the evidence presented. Therefore, we cannot hold that it was error to deny the appellants' motions for a directed verdict or judgment notwithstanding the verdict.

There was evidence introduced at trial that Porch was traveling at an unreasonable speed as he approached the intersection[4] and that he failed to maintain a proper lookout.[5] The jury could reasonably have predicated a finding of negligence on that evidence.

Appellants contend that because the testimony of Margie Adams was in the form of "adjectival descriptions," it was not a proper basis for liability under the rule of *D.C. Transit System, Inc. v. Perry*, D.C. App., 337 A.2d 224 (1975). We agree with the trial court that appellants have misconstrued *Perry*, in which this court held that in a passenger's suit against a common carrier, proof of negligent operation must be based upon "testimony consisting of something more than mere descriptive adjectives and conclusions." *Id.* at 225. *Perry* and *Wiggins v. Capital Transit Co.*, D.C.Mun. App., 122 A.2d 117 (1956), on which it was based, were cases about a common carrier's liability to a passenger, and, in that context, the court would not permit a finding of negligence based solely on testimony that the bus "jerked and jarred." Such movements were "no more than the necessary or usual incidents of the operation of the conveyance" which are part of the risk assumed by passengers. *D.C. Transit System, Inc. v. Perry, supra* at 225. A passenger inside the bus is not able to establish a prima facie case of negligence by merely presenting a description of movement equally consistent with proper operation of the bus. On the other hand, testimony of unreasonable speed, given by a witness who was outside the bus, is not descriptive of movement consistent with proper operation of the bus, and is not within the holding of *Perry*.

The general rule is that a court will allow a lay witness to describe the speed of a vehicle in adjectival terms. *Gober v. Yellow Cab Co. of D.C., Inc.*, D.C.Mun. App., 173 A.2d 915 (1961) (witness stated "driver was going too fast"); *Dunn v. Marsh*, 129 U.S.App.D.C. 245, 247, 393 F.2d 354, 356 (1968) (fire engine was "going pretty fast"); *Smith v. Doyle*, 69 App.D.C. 60,

---

**4.** 17 DCRR 22(c) (1970) (now 18 D.C.Mun. Reg. 2200.5 (1981)) provides in pertinent part: "The driver of every vehicle shall, consistent with the requirements of [this section], drive at an appropriate reduced speed when approaching and crossing an intersection...."

**5.** Appellants correctly assert that because Porch was the favored driver, he had no duty to anticipate that another vehicle would ignore the stop sign and proceed directly into the intersection. *Call Carl, Inc. v. Deadwyler*, D.C. App., 187 A.2d 701, 703 (1963). Nonetheless, the fact that the favored driver has the right of way does not relieve him of the duty to main-

tain a proper lookout and exercise reasonable care in entering an intersection. *Frager v. Pecot*, D.C.App., 327 A.2d 306, 307 (1974); *D.C. Transit System, Inc. v. Harris, supra* at 277. In both *Frager* and *Harris*, a favored driver was held to be contributorily negligent in failing to observe and avoid colliding with an unfavored vehicle which had entered the intersection illegally. In those cases, as in the case at bar, the vehicles which were struck were in front of the favored drivers, which is a significant fact in assessing the favored driver's negligence. *Elam v. Ethical Prescription Pharmacy, Inc.*, D.C.App., 422 A.2d 1288, 1291 n.6 (1980).

98 F.2d 341 (1938) (vehicle was "moving fast"). The testimony of excessive speed in this case was corroborated by evidence of the extensive damage and the considerable distance the vehicles traveled following impact. On the basis of the evidence presented, the jury was permitted, although not required, to find that the bus driver was negligent.

Appellants also contest the jury's findings on proximate cause. *Gulf Oil Corp. v. Reed,* 118 U.S.App.D.C. 212, 334 F.2d 960 (1964), cited by appellants, is inapposite to the case at bar. In *Reed,* a seven and a half year old child ran from behind a wall into oncoming traffic. Although there was evidence that the defendant's truck was traveling at an excessive rate of speed, the court held as a matter of law that defendant's speed was not the proximate cause of the accident. The truck was only two or three feet from the child when the driver first saw him. There was uncontradicted testimony that the accident occurred the moment the child stepped from behind the wall onto the roadway; it was obvious that regardless of the defendant's speed he could not have avoided hitting the child. In the instant case, there was evidence that the bus driver had time to and in fact did attempt evasive action. Therefore, we cannot hold that it was entirely unreasonable for the jury to infer that, but for the driver's excessive speed, there would have been no collision.

Appellants argue that Brenda Jones was contributorily negligent as a matter of law for failing to see the bus approaching. We accept as reasonable the jury's finding that Porch had the last clear chance to avoid the collision; therefore, we cannot dictate a finding that Jones' negligence was the proximate cause of the accident. Even if we hold that Jones was contributorily negligent as a matter of law for failing to look effectively before passing the stop sign, the negligence does not bar her right to recover where the bus driver had a last clear chance to avoid the accident. *Phillips v. D.C. Transit System, Inc.,* D.C.App., 198 A.2d 740, 741 (1964).

Appellants take issue with the application of the doctrine of last clear chance to the facts in this case. In *Mathews v. Lindsay,* 108 U.S.App.D.C. 292, 293, 281 F.2d 927, 928 (1960), the court set out the essential elements of the doctrine:

(1) that plaintiff was in a position of danger caused by negligence of both plaintiff and defendant; (2) that plaintiff was oblivious of the danger or unable to extricate himself from the position of danger; (3) that defendant was aware or by the exercise of reasonable care should have been aware of plaintiff's danger and obliviousness or inability to extricate himself from the danger; and (4) the defendant with means available to him was by the exercise of reasonable care able to avoid striking plaintiff after he became aware of the latter's danger and inability to extricate himself from danger, and failed to do so.

The trial court gave an appropriate instruction on last clear chance, including the following caveat:

It is not applicable if the time lapse between the discovery of the plaintiff's peril and the collision was not sufficient for the defendant to avoid the collision, for the defendant is not required to act instantaneously.

We hold there was an adequate factual predicate for the instruction on last clear chance. In *Phillips v. D.C. Transit System, Inc., supra,* the doctrine was not applied because the trial court found there was a lack of competent testimony that the bus driver was aware of the other driver's peril, or that, had he been aware, there was enough time in which to avoid the collision. In the instant case, the witness Adams said that the bus was a block away when the Jones' vehicle stopped at the stop sign; and indeed, the bus driver's own testimony was that he first saw appellees' car when both vehicles were forty feet from the intersection, and that he in fact did attempt evasive action. The jury need not have concluded that Porch had sufficient time in which to stop the bus; if he had only slowed the bus

down and veered to the left, he might have avoided the collision. *Byrd v. Hawkins,* D.C.App., 404 A.2d 941 (1979); *see Capitol Transit Co. v. Garcia,* 90 U.S.App.D.C. 168, 194 F.2d 162 (1952).

■ Although the case of *Frost v. Benedict,* 118 U.S.App.D.C. 26, 331 F.2d 772 (1964), cited by appellants, is similar to the case at bar, it is ultimately distinguished because in the instant case there is some evidence from which the jury could infer that by measures such as sounding the horn,[6] braking and swerving to avoid impact, the appellant could have avoided the collision with the Jones' vehicle, which had almost cleared the intersection at the time it was hit.

We are not prepared to say that there was no evidence to support the jury's finding that in the exercise of reasonable care the driver of the bus could have avoided the accident. We are equally unprepared to hold that the trial court abused its discretion in denying appellants' motion for a new trial on grounds the jury verdict was contrary to the weight of the evidence. *Queen v. D.C. Transit System, Inc.,* D.C. App., 364 A.2d 145 (1976); *Aqui v. Isaac, supra.*

### III

Appellants finally argue they are entitled to a new trial on account of errors which prejudiced their right to a fair trial. We briefly review these contentions.

■ The trial court gave an instruction on the D.C. Traffic Regulation governing uncontrolled intersections.[7] We need not decide whether that was error because the court also gave an instruction on the regulation governing intersections controlled by stop signs.[8] The jury found Jones did in fact breach her duty of care at the intersection; therefore, even assuming the jury was improperly instructed to the effect that Jones had a lesser duty of care than was in fact the case, there was no prejudice to the appellants. The jury's verdict on liability is based upon its finding that Porch had the last clear chance to avoid the accident. Therefore, it is logically irrelevant that the jury might have incorrectly assumed Jones had some legally non-existent right of way.

■ Appellants also claim prejudice from references in closing argument to Metro's wealth, made in the context of an assertion that Metro had ample resources and ability to locate certain accident records assumed to be in their possession.[9] Appellants rely on *Washington Annapolis Hotel Co. v. Riddle,* 83 U.S.App.D.C. 288, 171 F.2d 732 (1948), as mandating a mistrial in this case. In *Riddle,* the circuit court reversed the denial of a mistrial motion in a slander case in which plaintiff's counsel had expressly argued to the jury that his opponent intended to convince them the defendant could not have committed an intentional wrong because it was a "wealthy client, a big hotel, a corporation." The inflammatory remark in *Riddle,* going directly to the merits of the case, is substantially different from the comments made in this case. We hold *Riddle* is inapplicable to these facts.[10]

■ Appellants next contend that it was reversible error to deny their requested instruction No. 3. The proffered instruction, based on *Call Carl, Inc. v. Deadwyler,* D.C.App., 187 A.2d 701, 703 (1963), covered

---

6. 32 DCRR 6.401 (1973) (now 18 D.C.Mun. Reg. 730.3 (1981)) provides in pertinent part: "The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn."

7. 17 DCRR 46(a) (1970).

8. *Id.* at 48(a).

9. In closing argument counsel for one plaintiff stated, "... [Metro has] the most substantial financial resources of any organization in the Metropolitan Area...." At oral argument ap-

pellee disputed the accuracy of the transcript. We need not determine exactly what words were spoken, since neither version constitutes prejudicial error requiring reversal.

10. The trial court instructed the jury to "decide this case as an action between persons of equal standing in the community and of equal worth." That admonition makes it even less probable that the jury was prejudiced by counsel's reference to Metro's resources.

the proposition that a favored driver approaching an intersection controlled by a stop sign may assume an unfavored driver will yield before entering the intersection, and the jury must consider the fact that a driver had the right-of-way in determining whether he exercised reasonable care.

The refusal to grant an instruction is not grounds for reversal when the charge actually given, although in a more general form, fully informs the jury as to the law. *Evans v. Capital Transit Co.*, D.C.Mun.App., 39 A.2d 869, 871 (1944). The trial court's general charge to the jury adequately covered the substance of the requested instruction.[11] Therefore, reversal is not required. *Wingfield v. Peoples Drug Store, Inc.*, D.C.App. 379 A.2d 685 (1977).

Appellants finally argue it was error to preclude admission of records of a D.C. Government inspection of the bus, offered to corroborate the bus driver's testimony that the brakes were inoperable following the accident. Metro failed to produce its own repair records, and, over appellants' objection, the trial court gave Standard Instruction No. 17 which states that failure to provide stronger evidence on a material point permits the jury to view with caution the weaker, less satisfactory evidence actually offered on the point. Assuming the trial court erred in prohibiting introduction of the records and giving Standard Instruction No. 17,[12] we hold that such error was not so prejudicial as to constitute grounds for reversal. The evidence about the brakes went only to the question of how fast the bus was going and how far it traveled after impact; it could not have established that the bus was going slowly.

Moreover, there was other evidence that the bus was speeding. *See Payne v. Safeway Stores, Inc.*, D.C.App., 194 A.2d 669 (1963).

The jury's verdict in this action is supported by the evidence and the trial court was within its discretion in refusing appellants' motions for judgment N.O.V. or a new trial. Accordingly, the judgment on appeal is

*Affirmed.*

FERREN, Associate Judge, with whom NEWMAN, Chief Judge, joins, concurring:

While I join in Judge KELLY's opinion for the court, I would add that the facts here, manifesting negligence by the drivers of both vehicles, provide a classic illustration of why legislatures or courts—in 36 jurisdictions to date—have adopted the doctrine of comparative negligence. *See Alvis v. Ribar*, 85 Ill.2d 1, 11–14, 52 Ill.Dec. 23, 28–33, 421 N.E.2d 886, 891–95 (1981). *See generally* R. E. Keeton, Venturing To Do Justice 45–53, 85–89 (1969).

KERN, Associate Judge, dissenting, with whom NEBEKER and BELSON, Associate Judges, join *:

Appellees presented at trial two separate and distinct versions of their actions leading up to the intersectional collision which resulted in a jury verdict favorable to them: One version, testified to by Mrs. Jones, the driver of the automobile, and her passengers, was that she came to a complete stop at the intersection of O Street (which she was travelling and which was controlled by a stop sign) with 12th Street, Northwest. She and her front-seat passenger looked in both directions and saw nothing, and then

11. The trial court charged the jury as follows: ... You are further instructed that the party having the right of way has the right to assume that the other party will comply with the law and yield to him but the fact that he had the technical right of way does not excuse him from exercising ordinary care to avoid injury to others.

12. In its order denying appellants' post-verdict motions, the trial court indicated that inspection of the proffered records disclosed "absolutely nothing" concerning the condition of the

brakes and was therefore not probative on the issue. However, the trial court did concede in its order that the instruction should not have been given and that Metro/Porch should have been permitted to explain their failure to produce their own records.

* Judge Harris was a member of the Division majority in this case and participated in the en banc argument. He concurred in the dissent prior to his retirement from the court on February 5, 1982.

she "proceeded to go across [and] . . . [a]ll I can remember is that I saw a bright light and the impact." (Record at 179). The flash of light came from the right (Record at 214, 244) and turned out to be a bus owned by WMATA and operated by Mr. Porch, the appellants. Since 12th Street to the right of Mrs. Jones was level (Record at 219) and the bus and the streets were well-lighted (Record at 293–94) and no one in the auto saw the large bus (Record at 224, 243), the failure on appellees' part to see what was clearly there to be seen required the court to rule as a matter of law that Mrs. Jones was contributorily negligent. *Frager v. Pecot*, D.C.App., 327 A.2d 306, 307 (1974).

The second version of what Mrs. Jones did at the intersection of 12th and O Streets on the night of the collision contained in appellees' case was presented by a kind of mystery witness, Mrs. Adams,[1] who was partying in her home on 12th Street north of the intersection where the bus and the auto collided, (Record at 388) and who twice testified that "the accident happened so quickly" that the details of it were difficult for her to recall. (Record at 387–88.) Her version (Record at 385) was that the auto of Mrs. Jones *stalled* once she drove into the intersection. Mrs. Adams' assertion that Mrs. Jones stalled was at odds with the testimony of Mrs. Jones—the driver of the car—that she had proceeded across the intersection in a normal fashion after stopping. (Record at 196.)

Then, the question becomes whether this second version by appellees constituted sufficient evidence to put to the jury the issue of whether the bus driver had a last clear chance to avoid the accident. *See Phillips v. D.C. Transit System, Inc.*, D.C.App., 198 A.2d 740, 741 (1964). The doctrine of last clear chance "presupposes a perilous situation caused by the negligence of both the plaintiff and the defendant . . . ." *Hunter v. Robinson*, D.C.App., 294 A.2d 481, 483 (1972), quoting *Griffin v. Anderson*, D.C. Mun.App., 148 A.2d 713, 714 (1959).

The majority, in order to apply last clear chance, necessarily must ignore the version of events testified to by the driver of the auto, Mrs. Jones, and rely instead upon the testimony of Mrs. Adams. Her testimony as to the stalling of the auto in the intersection appears to supply for the majority evidence of the requisite position of peril in which Mrs. Jones and her passengers were placed. Mrs. Adams' testimony (Record at 380) that the bus "was really rolling", despite her further testimony (Record at 387) that "I can't tell you how fast it [the bus] was going," supplies the majority evidence of negligence on the part of appellants, which contributed to the placing of appellees in a situation of peril.[2]

However, we have heretofore held that last clear chance requires also that "after the situation had been created there was a time when the defendant [appellants here] could, and the plaintiff [appellees] could

1. This witness was not identified in pretrial papers (Record at 191) and required the issuance of a subpoena to attend the trial (Record at 359–60.) Another witness, the sole eyewitness to the collision who was *not* in either vehicle, was standing on 12th Street north of the intersection across from the Adams house. He did not see Mrs. Adams that night and would have remembered had he seen her, according to his testimony, since he knew her. (Record at 441–42.)

2. Parenthetically, I note that the federal court of appeals here has held in *Gulf Oil Corp. v. Reed*, 118 U.S.App.D.C. 212, 334 F.2d 960 (1964), that a trial court *incorrectly* permitted a case to go to the jury on the issue of negligence and proximate cause when the *only* evidence of negligence was that the defendant exceeded the speed limit at the time of the accident.

Here the only evidence of defendant's negligence was that the bus "was really rolling"—an opinion by a lay person who was unable to estimate the speed in terms of mileage. Indeed, the trial court struck the testimony by the witness that the bus was exceeding the speed limit. (Record at 387.) Assuming the testimony that the bus was really rolling was enough to permit a jury to infer the bus was exceeding the speed limit there was no evidence that exceeding the speed limit on 12th Street, which is one-way north and had very light traffic at the time (Record at 289–90), caused the accident.

Put another way, there must be some evidence, under the teaching of Judge Edgerton in *Gulf Oil*, that the accident might not have occurred *but for* the bus exceeding the speed limit. None was presented in the instant case.

not, avoid the accident. The doctrine [of last clear chance] is *not* applicable if the emergency is so sudden that there is no time to avoid the collision, as the defendant is not required to act instantaneously." *Id.* at 483 (emphasis added).

At this point, the majority, without citation to the record, employs the following *ipse dixit*:

> [I]n the instant case there is some evidence from which the jury could infer that by measures such as sounding the horn, braking and swerving to avoid impact, the appellant could have avoided the collision . . . .

However, there is simply no evidence of record that the bus driver could have avoided the collision as soon as he realized Mrs. Jones was not going to stop at the stop sign.[3] Thus, the majority is reduced to asserting in effect that the jury here may *speculate* that the driver of the bus had time not only to brake and swerve but also to blow his horn and that by such "means" the accident could have been avoided.

The majority's suggested evasive action, considering the reaction time and distances involved, would require extraordinary clairvoyance and dexterity. But more importantly, the majority's resort to conjecture highlights the failure of the facts in this case to satisfy one of the necessary prerequisites for applying the last clear chance doctrine—that the defendant had the time and the opportunity to avoid the accident.

That the passengers in the auto driven by Mrs. Jones suffered severe injuries as a result of the collision is highly regrettable. That the majority abandons its judicial responsibilities by upholding jury verdicts where the evidence is so lacking that the jurors can only speculate is equally regrettable. *See Washington Gas Light Co. v. Jones,* D.C.App., 332 A.2d 358, 361 (1975) (Harris, J., dissenting).

I respectfully dissent.[4]

BELSON, Associate Judge, dissenting:

I concur in Judge Kern's dissent. I add my view that the dissent's correct conclusion that appellee driver was, as a matter of law, not entitled to recover by reason of contributory negligence on her part which proximately caused the collision, would not affect the right of her passengers to recover. Her contributory negligence could not, under the circumstances here, be imputed to her passengers. *Peake v. Ramsey,* D.C. Mun.App., 43 A.2d 763 (1945).

---

3. The only evidence on this point was testimony by the bus driver, Mr. Porch, that he first saw the car when he was 40 feet from the intersection. (Record at 292). Assuming he should have *at once* realized she would be in his path and therefore taken evasive action there is nothing to show he could have done anything which would have been effective to avoid striking the auto of Mrs. Jones. If he was proceeding at the speed limit, 25 miles per hour, he was traveling at almost 37 feet per second.

4. I do not take up the various errors asserted by appellants to have occurred during trial that allegedly denied their right to a fair trial since none raised an issue requiring en banc consideration and determination. As I understand it, the court as a whole was concerned about the propriety of a judge refusing to enter a judgment notwithstanding the verdict in an intersectional collision case when it was asserted that the evidence of negligence and proximate cause was insufficient.